**KLEIN, Plaintiff-Appellant, v UNITED THEATERS COMPANY,
Defendant-Appellee.**

**SHUBERT, Plaintiff-Appellant, v UNITED THEATERS COM-
PANY, Defendant-Appellee.**

Ohio Appeals, First District, Hamilton County.

Nos. 6748-6749.   Decided January 13th, 1947.

Charles P. Taft, Cincinnati, for plaintiff-appellants.
Paxton & Seasongood, Cincinnati, for defendant-appellee.

## OPINION

By MATTHEWS, J.:

These two plaintiffs were holders of shares in the defendant, The United Theaters Company, a corporation under the laws of Ohio. Its principal asset was the Keith Building, an Office Building in Cincinnati, Ohio.

On April 10th, 1946, at a special meeting of stockholders of which due notice had been given, it was resolved to accept a bid for said property, and in accordance with the resolution the property was sold.

The plaintiff, Klein, attended this meeting and voted against the acceptance of the offer. The plaintiff, Shubert, did not attend the meeting. The plaintiff Klein announced at the meeting that he held Shubert's proxy, but that he had failed to bring it with him. He was not permitted to vote the Shubert stock, although he notified those present that Shubert was opposed to the sale. There were present in person or by proxy 5813 shares out of a total of 7667 shares outstanding. All present voted for the sale excepting Klein, who owned 160 shares.

These actions were filed by these dissenting stockholders under favor of §8623-72, GC, for a judgment for the fair cash value of their stock as of the day before the meeting at which the sale was authorized.

The question presented is whether they have performed the conditions essential to give rise to the cause of action. There is no claim of double dealing or other species of fraud and, therefore, the rights of the parties must depend on the construction of the relevant statutes and of the acts of the plaintiffs to determine whether the causes of action have come into being.

Now what are the provisions of the applicable statutes? The Section specifically applicable is §8623-72, GC, although it

incorporates by reference the whole General Corporation Act of 138 sections. By §8623-72, GC, it is enacted that upon the authorization of the sale of all or substantially all of the corporate assets or upon a consolidation or reorganization, a shareholder who has not voted for the sale, consolidation or reorganization shall be paid the fair cash value "if such shareholder within twenty days after the day on which the vote was taken, shall object in writing to the action so taken and shall demand in writing the payment of such fair cash value of his shares." It is required by the section that the objection and demand shall state the number and kind of shares held by the dissenter and the amount which he claims is the fair cash value. It is also provided that the right of the dissenter to the fair cash value shall cease if the corporation abandons the sale, etc., but the dissenter is not permitted to withdraw his demand without the consent of the corporation. The corporation is required to notify the dissenter within ten days in writing whether it will pay the demanded amount and if it will not pay that amount, state the amount it will pay. If the dissenter and the corporation do not agree on the amount, the dissenter, to preserve his right, must file an action to have the fair cash value determined, and if he does not his right is limited to the amount offered by the corporation, or if the corporation has made no offer, then the amount demanded by the dissenter. If the Court finds that the dissenter is entitled to the fair cash value, the method of determining it is set forth. It is also provided that the right to vote and other rights as a stockholder shall be either in abeyance or suspended from the time the dissenter makes his demand and so long as the proceeding is pending. Upon abandonment of the sale, the rights of the dissenter as a stockholder are revived. And it is expressly declared that "Any shareholder who does not object and demand in writing the payment of the fair cash value of his shares, in the manner and at the time hereinbefore provided, shall be concluded by the vote of the assenting shareholders."

We are indebted to counsel for information as to the status of similar legislation in other states. Some few states have no statutes providing for withdrawal of dissenters from the course outlined by the majority. Most, however, have some statute on the subject, although many make a distinction between a consolidation or reorganization and a sale of all or substantially all of the assets. See, Report on the Study and Investigation of Reorganization Committees, made pursuant to Section 211 of Securities Exchange Act of 1934, "Part

VII" p. 591, et seq. See, also, Ballentine on Corporations, Revised Edition of 1946, where it is said at page 675:

"It is a debatable question of policy whether minority dissenting shareholders should be given the privilege of demanding payment in cash of the appraised value of their shares as a safeguard against possible unfairness. This remedy is more commonly given in case of merger or consolidation."

However, the General Assembly of Ohio has declared the policy for this state to be that in cases not only of consolidation and reorganization, but also in cases of the sale of all or substantially all of the assets a dissenting shareholder shall be entitled to be paid the fair cash value of his stock by complying with the statutory requirements.

Both because they are in pari materia, and also because the entire chapter is incorporated into §8623-72, GC, that section must be construed in the light of all relevant provisions of the chapter. One section that influences the meaning of this section is §8623-2, GC, which defines certain terms used in the chapter, and particularly the definition of the term "shareholder" as follows: "The term 'shareholder' means 'holder of record of shares' or 'shareholder of record' and shall include a subscriber to shares unless the context otherwise requires."

Another section that requires attention in determining the meaning of §8623-72, GC, is §8623-53, GC, by which it is provided that:

"Any shareholder of record who is entitled to attend a shareholders' meeting, or to vote thereat or to assent or give consents in writing, is entitled to be represented at such meeting or to vote thereat or to assent or give consents in writing, as the case may be, or to exercise any other of his rights, by proxy or proxies appointed by a writing signed by such shareholder.

"A telegram, cablegram, wireless message or photogram appearing to have been transmitted by a shareholder, or a photograph, photostatic or equivalent reproduction of a writing appointing a proxy or proxies shall be a sufficient writing.
* * * * *

"(1) In case two or more persons are appointed and but one attends the meeting he may exercise all the authority, subject, however, to the provisions of sub-paragraph (4) hereof:

\* \* \* \* \* ."

Now what was done by these plaintiffs to disassociate themselves from the action of the majority under which they would be on a parity with them in the selling price, and to create in themselves the right to have the fair value of the corporate assets determined in the manner prescribed and to receive their proportionate share, based on that valuation?

As already noted, Klein attended the meeting of stockholders and voted against the sale, and without presenting a proxy from Shubert, notified the meeting that Shubert was opposed to the sale. Thereafter, on April 27th, 1946, and within twenty days of the meeting, Klein's attorney objected in writing to the sale and demanded in writing the payment of the fair cash value of his stock and stated the amount which he claimed as the fair cash value. At that time a letter from Klein to his attorney was in the mail, but had not been delivered, and the attorney acted in pursuance of authority conferred in a telephone conversation, in which he was told the letter was in transit. This letter signed by Klein arrived two days later and, without quoting it, we think it is sufficient to say that it authorized the law firm of plaintiffs' attorney to object and demand the fair cash value, and fixed the cash value at $210.00 per share. In a postscript it was stated that plaintiffs' attorney could make the same demand on behalf of Shubert.

On the same day that the foregoing letter was received in Cincinnati, a conference was held between plaintiff Klein and plaintiffs' attorney in New York City, in which Klein on behalf of himself and Shubert orally authorized plaintiffs' attorney to protest and demand $240.00 per share for the stock. There was no direct communication with Shubert.

On the same day letters signed in the firm name were addressed to the defendant on behalf of both Klein and Shubert protesting against the sale and demanding $240.00 per share for their stock. These letters were received by defendant within twenty days of the resolution authorizing the sale. Within a week the defendant wrote to each plaintiff denying the validity of the notices, but stated a willingness to pay $150.00 per share.

There was no personal interview between Schubert and plaintiff's attorney during the twenty days following the sale's resolution and no written authority from him until June 26th, 1946, when he and Klein joined in executing a formal power of attorney confirming the authority theretofore given to their attorneys to protest against the sale and demand on their behalf the fair cash value of their stock and authorizing them to institute actions to obtain the appraised value of the stock. In the meantime, these actions had been filed.

The sufficiency of the foregoing proceedings as a compliance with the statutory requirements is assailed on three grounds:— (1) That no notice in writing signed personally by the shareholder or on his behalf by his agent or attorney acting under his written authority, filed with the defendant within the twenty day period, was given; (2) That as to Schubert, there was no written authority signed by him; and, (3) As to Klein, the attorney, by demanding more than that stated in the writing, exceeded his authority, and invalidated the protest and demand thus made in his name.

The plaintiffs assert that there has been a substantial compliance with the statute.

Which is right depends upon the true construction of the statutes on the subject.

We have found no Ohio case that furnished any light on their meaning, and have been furnished with none through the diligence of counsel.

It seems too clear for argument that the statute requires a written protest and demand to be made—and, indeed, there has been no argument on that point.

Inasmuch as a shareholder acts solely in his own interest and in no sense in a fiduciary capacity in deciding whether to take the sale price or the appraised value, it is equally clear that there is no principle of public policy against the delegation of the authority to another to act for him.

However, it seems that at common law, according to the weight of authority, there was no right to vote corporate stock by proxy. 13 Am. Jur., 533, et seq. That such a right is conferred by statute is not questioned by any one, and it is not questioned that it is within the legislative competence to authorize a shareholder to exercise his rights as such through an agent in all respects.

The main issues between the parties are as to whether the delegation of authority must be in writing and whether the written authority must accompany the written protest and demand, or, at least, delivered to the corporation within the period allowed for the filing of the protest and demand.

By §8623-53, GC, already quoted a shareholder is authorized to vote or exercise any other of his rights by proxy or proxies appointed by a writing signed by such shareholder. This would seem to be susceptible of a construction broad enough to permit the shareholder to act through an agent in making the objection and making the demand authorized by §8623-72, GC. Perhaps by a strict construction it might be possible to give it a more limited operation. However, whether it be given a broad or more limited field of operation, it would seem that whenever it authorized a delegation it requires that it be evidenced by a writing signed by the shareholder.

In the recent case of Era Co. v Pittsburgh Consolidated Coal Co., 49 Atl., (2d) 342, the Supreme Court of Pennsylvania construed the statutes of that state relating to the rights of dissenting shareholders upon a merger of corporations. The court stated the rule for its guidance to be that: "Where a remedy or method of procedure is provided by an Act, its provisions shall be strictly construed and exclusively applied." The following quotation from the opinion sufficiently indicates the facts and the ruling of the Court:

"The learned counsel for appellant concedes that under the act it is the registered owner who must act, but earnestly maintains that it was the registered owner who was acting, 'through his agent.' With this we do not agree. A letter from a New York Bank stated that an undisclosed client held 250 shares of the coal company stock and wished to vote against the merger; that the certificates are registered 'in the name of (the bank's) nominee' and under separate cover the bank was forwarding a proxy to vote against the merger. Such a letter cannot be construed as a written objection from the registered owner. What authority did a stranger to the corporation have to declare that its undisclosed client was the true owner of the shares? The corporation was under no duty to ignore its stock registry and pass upon the equitable ownership of the shares. An objection by an alleged agent of an undisclosed principal cannot be regarded as that made by the registered owner. The corporation properly ignored such an irregular objection. The petition by the alleged beneficial owner for an appraisement and payment of fair value, likewise is not the act of the registered owner as required by the act."

There are two cases decided by the Supreme Court of

Delaware that shed light upon the proper construction of similar statutes and the reasons therefor. The first of these cases is In Re Universal Pictures Co., Inc., — Del. —, 37 Atl. (2d) 615. The statutes under consideration related to the rights of dissenting shareholders upon a consolidation or merger. The statutes did not apply to a sale of the assets as do the Ohio statutes. In all other respects, the statutes while differing in detail of procedure do not differ in substance. As we view it, there is probably greater opportunity for over-reaching by the majority upon a consolidation or merger than upon a sale of the assets. Upon the necessity of written objections, the court said at page 618:

"From the statute, it seems to me beyond dispute that the burden falls upon a dissenting stockholder to establish his right to an appraisal and payment. This right is dependent upon the performance of prescribed conditions by a stockholder; written objection, written demand (within certain periods), and non-voting of shares in favor of the merger. It is but logical, absent any contrary direction, that a person asserting the right should show that he is a stockholder within the statutory meaning, and that he has satisfied those conditions required of him for the perfection of that right."

After holding that stockholders could act through agents in making their objections and demands the court at page 621, on the subject of the necessity of having and furnishing evidence of authority at the time, said:

"I shall proceed to the contention that the objections and demands were defective, in that no evidence of the purported agents' authority was furnished the corporation when these documents were presented to it. The corporation urges that 'It was vital for the corporation to know whether, at the time when the objections were filed, the objections were by bona fide stockholders or were the acts of interlopers who, for collateral reasons, desired to be obstructive.' As has already been indicated, objections and demands are calculated to induce important action by other stockholders, (approval or disapproval of a merger) and by the corporation (action relating to the disenfranchisement and dividend disqualification). It is

well settled that the existence of an agency is not presumed; that, in general, an 'agent cannot establish his own authority, either by his representations or by assuming to exercise it;' and that 'every authority must find its ultimate source in some act or omission of the principal.' Jordan Piano Co. v Lewis, 4 W. W. Harr, 423, 433, 154 A. 467, 472; see also 2 C. J. S., Agency, section 16, p. 1041; 1 Restatement of Agency, sections 8, 27; 2 Restatement of Agency, section 285. In several instances, the only evidence of the existence of an agency before the stockholders, or the corporation, when the objections and demands were filed, was the representation of the purported agent (a stranger to the corporation in so far as the shares in question were concerned), and his assumption to exercise it. Under such circumstances, it would seem manifestly unreasonable to require consenting stockholders, or the corporation, to assume the existence of an agency and take action upon that assumption."

This case was followed in the second case, Friedman v Booth Fisheries Corporation, 39 Atl. 761, in which an attorney-at-law assumed to act for the dissenting stockholder. It was contended that the authority of an attorney-at-law was presumed, but while conceding that the authority of an attorney-at-law to appear and represent his client in a court proceeding may be presumed, the court, nevertheless, held that "where, as here, the asserted agency is not one which can be performed only by an attorney-at-law, the authority of a lawyer is no more presumed than that of a layman." In this case one of the dissenting stockholders had given a proxy in which he specifically directed that his shares should be voted against the merger, but the court held that this was not an express written objection to the merger, that: "It is reasonable to believe that many shareholders might desire to vote against a merger without any intention of proceeding under section 61 if the merger should receive the requisite approval of other shareholders at the meeting."

In the earlier case of Schenck v Salt Dome Oil Corporation, 34 Atl. (2d) 249, the court held, under a former statute, that the actual owner of stock, having made the objection and given the written notice and otherwise complied with the statute, was entitled to the rights of a dissenting stockholder to have an appraisal of his stock. However, no such question is presented in the case at bar.

Nor are we presented here with any question of waiver of compliance with any provision of the statutes. The only

personal contact or communication between either of the plaintiffs and the defendant was when Klein attended the stockholders' meeting, at which the resolution to sell was adopted, and at that meeting the necessity for the presentation of written authority from the shareholder of record was called to his attention by the refusal of the assembled stockholders to permit him to vote the Shubert stock against the sale.

In the light of these authorities and statutory provisions, and especially of the express language of §8623-53, GC, giving to the shareholder the right to exercise "any other of his rights—" than those enumerated, "by proxy or proxies appointed by a writing signed by such shareholder" it is our conclusion that only in that way can authority be conferred.

We also hold that such written evidence of the agent's authority must be submitted to the corporation within the statutory period within which the objection and demand must be given.

As neither of the plaintiffs complied with these statutory requirements necessary to give rise to the right to have the appraised value of their stock, the judgment in each case is affirmed.

HILDEBRANT, PJ, MATTHEWS and ROSS, JJ, concur in Syllabus, Opinion and Judgment.