CALISTA CORPORATION, Appellant,

v.

Davell DeYOUNG et al., Appellees.

No. 2590.

Supreme Court of Alaska.

April 6, 1977.

James P. Doogan, Gallagher, Cranston & Snow, Anchorage, for appellant.

Avrum M. Gross, Atty. Gen., Juneau, and R. Bruce Tennant, Asst. Atty. Gen., Anchorage, for appellees.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, ERWIN and BURKE, Justices.

## OPINION

ERWIN, Justice.

This appeal presents four major contentions of error[1] arising from an order entered by the lower court affecting certain property rights in stocks issued pursuant to the Alaska Native Claims Settlement Act.[2] The issues necessarily decided on appeal of this case will be addressed after a statement of the facts.

This is an equitable action in the nature of a complaint for injunctive relief. The

---

1. Specifically appellant raises the following:

   (1) Did the superior court by its order alienate native corporation stock in a manner not permitted by the Alaska Native Claims Settlement Act?

   (2) Did the superior court by its order alienate native corporation stock in a manner not permitted by state law?

   (3) Were the native corporations improper parties to this action because the superior court lacked jurisdiction over the distributions or the stock, and failed to properly join indispensible parties due to lack of constitutionally required notice?

   (4) Did the superior court fail to properly balance the potential burdens to the corporations against the potential benefits to the plaintiffs and society in fashioning equitable relief?

2. Pub.L. 92–203; 85 Stat. 688; 43 U.S.C. 1601, *et seq.*

proceedings below were instituted by the Attorney General for the State of Alaska on behalf of mothers entitled to child support payments under existing court orders and also on behalf of the Court Trustee, who is charged with enforcing those support orders. Plaintiffs (appellees herein) sought to obtain cash distributions from stock in corporations formed pursuant to the Alaska Native Claims Settlement Act and held by defendant fathers delinquent in their child support payments, with such monies being applied against outstanding child support arrearages. Initial defendants were 12 Native regional corporations organized under the Alaska Native Claims Settlement Act, including Calista Corporation (appellant herein).

Initially, plaintiffs were granted a temporary restraining order preventing the regional corporations from distributing funds to their shareholders owing child support arrearages to plaintiffs. Following hearings the court below continued the temporary restraining order for ten days against all corporations except Calista Corporation so that plaintiffs could file an amended complaint. The temporary restraining order against Calista Corporation was vacated upon representation by counsel that their distribution was not planned until December, 1974.

Plaintiffs filed their amended complaint on October 23, 1974, with service attempted upon the 88 named individual defendants as well as the 12 regional corporations. The amended complaint sought to have the suits declared a class action against the 88 named defendants and others similarly situated who:

. . . [are] eligible for benefits under the Alaska Native Claims Settlement Act who may be in arrears in the future under child support orders in this [Third Judicial] district.[3]

Other specific relief requested in the amended complaint included an attachment of the named defendant's shares in the re-

gional corporations; an order temporarily restraining the regional corporations from distributing cash disbursements; an order that the regional corporations identify each to the Court Trustee and all cash distributions applicable to those shares be applied to child support arrears owed by named defendants, and further, that all incidents of ownership of the regional corporation shares, except for the cash distributions, be transferred back to the individually named defendants and that the shares remain in the name of the Court Trustee until such time as the individually named defendants became current in their child support payments. The order also imposed certain notice and hearing requirements upon the Court Trustee with respect to cash distributions by the regional corporations. Calista Corporation now appeals from this order.

Before we address the substantive issues raised in this appeal, we must first determine whether or not the state courts of Alaska have jurisdiction over the matters raised below. The federal government's plenary and exclusive power over Indian affairs mandates that we find a jurisdictional basis in the federal acts giving Alaska's courts the power to adjudicate rights under the Alaska Native Claims Settlement Act. We turn first to the grant of general jurisdiction found in 28 U.S.C. § 1360, which provides:

(a) Each of the States or Territories listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over other civil causes of action, and those civil laws of such State or Territory that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory:

---

**3.** Record of Appeal, Vol. I, page 57.

| State or Territory of | Indian country affected |
|---|---|
| Alaska | All Indian country within the Territory |
| California | All Indian country within the State |
| Minnesota | All Indian country within the State, except the Red Lake Reservation |
| Nebraska | All Indian country within the State |
| Oregon | All Indian country within the State, except the Warm Springs Reservation |
| Wisconsin | All Indian country within the State |

(b) Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property, including water rights, belonging to any Indian or any Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States: or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute or with any regulation made pursuant thereto; or shall confer jurisdiction upon the State to adjudicate, in probate proceedings or otherwise, the ownership or right to possession of such property or any interest therein.

This section clearly gives the jurisdictional authority to Alaska state courts to adjudicate rights in divorce proceedings involving Alaska Natives, since such proceedings involve "civil causes of action between Indians or to which Indians are parties." We hold that that authority encompasses the authority to enforce the property and support provisions of the divorce judgment, so long as the judgment does not involve property which is the subject of 28 U.S.C. § 1360(b). After an examination of the Alaska Native Claims Settlement Act, we have determined that the stocks which are the subject of this litigation are not § 1360(b) property.

By operation of § 7(h)(1) of the Alaska Native Claims Settlement Act, 43 U.S.C. § 1606(h)(1), we find these stocks are not subject to the general limitations against alienation if the transfer falls within the scope of the proviso clause. In its entirety, 43 U.S.C. § 1606(h)(1) reads:

Except as otherwise provided in paragraph (2) of this subsection, stock issued pursuant to subsection (g) of this section shall carry a right to vote in elections for the board of directors and on such other questions as properly may be presented to stockholders, shall permit the holder to receive dividends or other distributions from the Regional Corporation, and shall vest in the holder all rights of a stockholder in a business corporation organized under the laws of the State of Alaska, except that for a period of twenty years after December 18, 1971, the stock, inchoate rights thereto, and any dividends paid or distributions made with respect thereto may not be sold, pledged, subjected to a lien or judgment execution, assigned in present or future, or otherwise alienated: *Provided*, that such limitations shall not apply to transfers of stock pursuant to a court decree of separation, divorce or child support.

We find that the action presently before us is one which seeks to enforce child support decrees, and accordingly the stocks are not subject to the limitations generally forbidding alienation. We view the case presently before us seeking to enforce child support provisions of divorce decrees as concerning property not subject to the restriction on alienation in 43 U.S.C. § 1606(h)(1) and thus not § 1360(b) property. Thus, we hold that the superior court has jurisdictional authority over the subject action.

Our decision is supported by a reading of the entire Alaska Native Claims Settlement Act. The Act provides in sections 7(d) and 8(a), 43 U.S.C. § 1606(d) and § 1607(a), that the regional and village corporations organize or incorporate under the laws of the State of Alaska. The legislative history of the Act indicates that Congress intended state jurisdiction over Native corporate affairs, except as otherwise limited in the Act.[4] It is thus incumbent upon us to de-

4. 1971 U. S. Code Cong. and Adm. News, page 2199.

termine whether there are provisions in the Act which limit the actions taken by the court below.

Accordingly, we turn now to appellant's first contention of error, which is: The superior court by its order alienated native corporation stock in a manner not permitted by the Alaska Native Claims Settlement Act.

Within this contention of error two separate issues requiring adjudication are presented. First, did the court's order *split native corporation stock rights* in a manner not permitted by the Alaska Native Claims Settlement Act; and secondly, did the court alienate native corporation stock in *proceedings forbidden* by the Alaska Native Claims Settlement Act?

In his order of June 3, 1975, Judge Lewis stated that the action before the court was "in the nature of a garnishment, brought to enforce child support orders entered in this judicial district." Judge Lewis thereafter ordered the transfer of stock owned by named stockholder defendants to a court trustee. He ordered further that:

> The stock shall be held in trust by the Court Trustee and all cash distributions resulting from ownership of that stock, whether dividends or other distributions, shall be applied to child support arrears owed by the obligors. Physical transfer of stock certificates to manifest the stock transfers shall not be necessary.
>
> IT IS FURTHER ORDERED that other incidents of stock ownership, including but not limited to the right to vote and participate in corporate affairs, the right to eventual residual ownership of shares in the named Corporations, and all other rights to the stock, save and except the annual cash payment or other cash disbursement, are hereby transferred back to the individual. The Court Trustee may not and shall not exercise any discretion as to the ownership of any incidents

of the stock other than the cash disbursements.[5]

■ Appellant's contention of error, insofar as it pertains to the splitting of native corporation stock rights, is founded on a statutory interpretation argument. The statute in question is 43 U.S.C. 1606(h)(1) of the Alaska Native Claims Act, which provides:

> Except as otherwise provided in paragraph (2) of this subsection, stock issued pursuant to subsection (g) of this section shall carry a right to vote in elections for the board of directors and on such other questions as properly may be presented to stockholders, shall permit the holder to receive dividends or other distributions from the Regional Corporation, and shall vest in the holder all rights of a stockholder in a business corporation organized under the laws of the State of Alaska, except that for a period of twenty years after December 18, 1971, the stock, inchoate rights thereto, and any dividends paid or distributions made with respect thereto may not be sold, pledged, subjected to a lien or judgment execution, assigned in present or future, or otherwise alienated: *Provided*, That such limitation shall not apply to transfers of stock pursuant to a court decree of separation, divorce or child support.

Appellant argues that from the language of this section, it is clear Congress intended that the beneficial monetary interest in the stock should not be separated from the right to vote the stock. After pointing out that various sections of the Act are designed to protect and assist the native corporations during their "critical formative years,"[6] appellant asserts that the provisions found in § 1606(h)(1) are likewise of this protective character.

Appellant contends that Congress foresaw the introduction of the Native community of Alaska into the sophisticated world

---

5. Record of Appeal, Vol. I, pages 162–163.

6. Citing to 43 U.S.C. § 1606(e) (requiring Interior Department approval for initial articles of incorporation); 43 U.S.C. § 1606(*o*) (requiring annual audits and review thereof by the Interior Department and Congress); 43 U.S.C. § 1620 (making initial funds and real property non-taxable); 43 U.S.C. § 1621(a) (allowing avoidance of certain percentage-free contracts).

of corporate activity as a traumatic experience and in order to achieve the purpose of the Act, built in special protections. The protective theory behind the section in question is that those individuals receiving monetary benefit from the stock would also remain interested in the internal corporate activity and therefore exercise their right to vote, thus fostering and preserving the interest of the individual shareholder in the immediate success or failure of the corporation. appellants bolster this reasoning by citing § 1606(j) of the Act, which requires short-term distributions of monies, reasoning again that this is part of the congressional scheme aimed at keeping stockholders interested in the present functioning of the corporation.

By virtue of the lower court order, appellants argue the intent of the federal act is frustrated, reasoning that once the monetary interest of the stock is separated from the holder of the right to vote the stock, the chances of that individual voting diminish.

The appellees counter the above contentions by arguing that this court must read the section in question, 1606(h)(1), within the context of the entire Act in order to grasp its full intention. While agreeing that § 1606(h)(1) does restrict alienation or attachment with respect to the stock, appellee points out that certain exceptions are expressly stated to this, and further that the facts of this case fall directly into one of these express exceptions. To this end appellee cites the proviso clause of § 1606(h)(1), which read:

> Provided, that such limitation shall not apply to transfers of stock pursuant to a court decree of separation, divorce or child support.

Appellees argue that this gives the court the power to transfer the entire ownership of the stock, and thus it follows that the court has the power to transfer something less than the whole. To bolster this assertion appellees note that within the same statute there is language which, when read in light of the issue being analyzed here, demonstrates Congress meant to allow this sort of separation of interests after the passage of 20 years. Appellees contend it is thereby established that this separation of interests will be possible in the future, just as total alienation will be; therefore it analytically follows that if the exception takes the total transfer out of the general rule, there can be no sound objection to allowing the exception to also extend to separation of interests.

Thus, within a single statute we find language which appears to presently prohibit several methods of alienating the stock or interests therein and a "proviso" clause that seems to allow the court in limited situations to order total alienation of the stock. The question then is: May the court take action which amounts to less than total and complete alienation within the confines of this exception? We believe the answer is yes.

We find that while the Act does prescribe limitations concerning the alienation of this stock, such limitations and exceptions thereto should be interpreted in a manner consistent with the broad intentions of the entire Act. In viewing the entire Act, we find that on balance the competing legislative policies favor the appellee's interpretation of § 1606(h)(1), and accordingly we affirm the decision of the lower court insofar as the order allows the splitting of rights in native corporation stocks.

■ Next we turn to the question concerning whether the trial court's order alienates native corporation stock in proceedings forbidden by the Alaska Native Claims Settlement Act.

Appellant contends that the language of the "proviso" clause which grants power to the court to order "transfers of the stock pursuant to a court decree of separation, divorce or child support" must be read to prohibit stock transfers other than in the original prescribed court proceeding. Appellees contend to the contrary and read the proviso clause to allow these shares to be available to satisfy child support obligations not only in the original proceedings but also in proceedings held as a consequence of the original child support orders.

With regard to the interpretation of the phrase "pursuant to," the case of *State ex. rel. Ickes v. Slinger,* 79 Ohio App. 334, 73 N.E.2d 385 (1946), is useful. In that case, which sought to interpret the language "pursuant to" found within a statute relating to the vesting of beneficiary interests in a municipal pension fund, the court stated:

"Pursuant to" means "conformable to," "agreeable to," "in accordance with," "in conformity with."[7]

We adopt the interpretation advanced by the *Slinger* case and find accordingly that the federal act is not violated by a transfer ordered in a proceeding which is the consequence of the original court action. We thus find no error insofar as appellant's first contention of error is concerned.

Next we turn to appellant's second contention of error, which requires us to determine if the superior court by its order alienated native corporation stock in a manner not permitted by state law.

Within this contention of error two separate issues requiring adjudication are present. First, did the superior court's order split rights appurtenant to native corporation stock in a manner prohibited by state law; and secondly, did the superior court's order alienate native corporation stock in proceedings not permitted by state law?

▮ Here the appellant argues that state statutes are violated by the order of the lower court. The state statute in question is AS 22.10.020(d), which reads as follows:

The superior court, *in an action* for divorce, separation, or child support, affecting inalienable stock in a corporation organized under the federal Alaska Native Claims Settlement Act (P.L. 92–203; 85 Stat. 688; 43 U.S.C. § 1601 et seq.), may order *the stock transferred* to the spouse, a child, or a guardian or custodian for a child, but may not order it sold on the open market or transferred to other persons. (Emphasis added)

The same arguments are founded on this state statute, as were earlier made with respect to the federal statute, i.e. the transfer must be total and the type of action cannot be a later action which is only a consequence of the earlier child support adjudication. The arguments pro and con are virtually identical.

In analyzing the legislative history of these statutes we find in § 1, chapter 70, SLA 1972, it is noted that:

It is the purpose of this Act to implement the Alaska Native Claims Settlement Act (P.L. 92–203; 85 Stat. 688) by amending state law to resolve those ambiguities, conflicts and problems directly or impliedly created by the enactment by Congress of the Alaska Native Claims Settlement Act. It is also the purpose of this Act to complement through state policy, in a reasonable and fair manner, the federal policy expressed in that Act.

We find no state legislative enactments or proclamations illuminating further the purpose of AS 22.10.020(d). Lacking legislative expression to the contrary, we find the state statute was enacted to parallel the federal statute. Accordingly, we find our holding on the appellant's first contention of error controlling here as well, and we thus affirm the court below.

▮ The more serious challenge based on state law is to be found within the appellant's contention concerning the action of the lower court as being violative of AS 10.05.165(b)[8] and AS 10.05.159.[9] This contention is founded on that portion of the lower court's order "transferring and re-transferring" the stock. The appellant interprets that portion of the lower court's order as violating Alaska proxy voting stat-

---

7. 73 N.E.2d at 387 (citation omitted).

8. AS 10.05.165(b) provides in part:
Shares standing in the name of a trustee may be voted by him, *either in person or by proxy,* but no trustee may vote shares held by him without a transfer of the shares into his name. (Emphasis added)

9. AS 10.05.159 provides:
A shareholder may vote *either in person or by proxy executed in writing* by the shareholder or by his authorized attorney in fact. No proxy is valid after 11 months from the date of its execution. (Emphasis added)

utes. The pertinent sections of the order are as follows:

IT IS FURTHER ORDERED that the stock in the Corporations owned by the defendants named herein in Exhibit "A", shall be transferred to the Court Trustee of the Third Judicial District upon his notification to the Corporations pursuant to this order. The stock shall be held in trust by the Court Trustee and all cash distributions resulting from ownership of that stock, whether dividends or other distributions, shall be applied to child support arrears owed by the obligors. Physical transfer of stock certificates to manifest the stock transfers shall not be necessary.

IT IS FURTHER ORDERED that other incidents of stock ownership, including but not limited to the right to vote and participate in corporate affairs, the right to eventual residual ownership of shares in the named Corporations, and all other rights to the stock, save and except the annual cash payment or other cash disbursement, are hereby transferred back to the individual. The Court Trustee may not and shall not exercise any discretion as to the 'ownership of any incidents of the stock other than the cash disbursements.

.    .    .    .    .

IT IS FURTHER ORDERED that the stock transferred to the Court Trustee *shall remain in the name of the Court Trustee* until such a time. . . .[10]

The court order mandated the corporation to issue the subject stock to the Court Trustee without the requirement of actual physical transfer in order to insure that the cash distributions and dividend would go to the Court Trustee. In addition the court ordered a re-transfer back to the original stockholder of all rights but the right to receive dividends and cash disbursements. We note, however, that the order makes it clear the stock is to be held in the name of the court trustee.

The appellants contend that the noted Alaska statutes set forth the exclusive method of splitting the right to vote from the monetary interest in a stock, and that further, the order of the lower court did not comply with this method in that it required no proxy on the part of the court trustee. On this aspect of appellant's second contention of error, we REMAND to the court below and mandate that it order the court trustee to issue proxies in conformity with AS 10.05.165(b) and AS 10.05.159, for we find it is clearly an established rule of corporation law that the prime consideration regarding the validity of a proxy is whether the subject proxy complied with the applicable statutory requirements.[11] Here we find these requirements were not met, because the subject shares were held in the name of the court trustee but no written proxies were executed in favor of the parties having the right to vote the stocks. This defect in the order of the lower court will be cured once the order is amended to reflect the necessity of the court trustee issuing written proxies, thus bringing the order of the lower court within the mandates of the state proxy statutes.

We turn next to appellant's third contention of error, which asks, Were the native corporations improper parties to this action because the superior court lacked jurisdiction over the distributions or the stock and failed to properly join indispensable parties due to lack of constitutionally required notice?

█ It is first asserted that because the lower court failed to physically seize the stock certificates, Alaska law prohibits either pre-judgment garnishment or post-judgment execution against the stock or dividends resulting therefrom. Next it is asserted that given the nature of the lower court proceedings, the individual stockholder-defendants were indispensable parties,

10. Record of Appeal, Vol. I, pp. 162–163 (emphasis added).

11. *In re Schwartz & Gray, Inc.*, 77 N.J.L. 415, 72 A. 70 (1909); *Klein v. United Theaters Co.*, 80 Ohio App. 173, 75 N.E.2d 67 (1947), aff'd, 19 Ohio St. 569, 74 N.E.2d 319 (1947).

and because they were not properly joined due to constitutionally defective notice, the lower court was without jurisdiction.

The appellants take the position that AS 45.05.672(a) is dispositive of this first allegation. AS 45.05.672 reads in full as follows:

(a) No attachment or levy upon a security or share or other interest evidenced by it which is outstanding is valid until the security is actually seized by the officer making the attachment or levy, but a security which has been surrendered to the issuer may be attached or levied upon at the source.

(b) A creditor whose debtor is the owner of a security is entitled to such aid from courts of appropriate jurisdiction, by injunction or otherwise, in reaching the security or in satisfying the claim by the security as is allowed at law or in equity in regard to property which cannot readily be attached or levied upon by ordinary legal process.

Because no actual attachment was undertaken by the plaintiffs in the lower court, the appellant contends the superior court had no jurisdiction to issue its order pertaining to the subject stock.

In examining the history of AS 45.05.672, we find that it was part of a larger legislative enactment which codified into Alaska law the provisions of the Uniform Commercial Code.[12] After study of the legislative purpose of the parallel U.C.C. provision and its uniform law predecessor,[13] we have reached the conclusion that it has as its primary theme the negotiability of the certificates; and this negotiability cannot exist unless there is only one certificate for given shares, carrying with it the ownership of the shares themselves.[14] To this end the statute requires that in order to attach or levy upon a security actual seizure must be had to avoid a situation where securities could be traded which are subject to liens not appearing on the face of the instrument.

In applying the statute to the facts of this case, we find that its legislative intentions are not violated by the failure of the trial court to require actual attachment of the subject stocks. This result is reached by virtue of the federal act, which makes the stocks totally inalienable for 20 years from the date of December 18, 1971.[15] Because the stocks are inalienable, the policy considerations underlying AS 45.05.672 are not applicable because there is no innocent purchaser to protect. Accordingly, we affirm the action of the lower court and find that it was unnecessary for there to be actual seizure of these stocks before they could be attached.[16]

■ As its next allegation of error, appellant asserts that the individual stockholder-defendants were indispensable parties to this action and were not properly

---

**12.** Section 8–317 of the Uniform Commercial Code is identical to AS 45.05.672.

**13.** Uniform Stock Transfer Act §§ 13 and 14.

**14.** *See* Austin & Nelson, *Attaching and Levying on Corporation Shares,* The Business Lawyer, Vol. 16, page 336 (1961).

**15.** 43 U.S.C. 1606(h)(1) provides in part:
. . . except that for a period of twenty years after December 18, 1971, the stock, inchoate rights thereto, and any dividends paid or distributions made with respect thereto *may not be sold, pledged, subjected to a lien or judgment execution, assigned in present or future, or otherwise alienated* . . . (Emphasis added)

**16.** The requirement of actual attachment prior to a valid levy which is mandated by AS 45.05.- 672 is excused in this case because of the non-negotiability of the stocks by virtue of 43 U.S.C. 1606(h)(1). Because of this non-negotiability as well as the fact that the court order mandates that the stocks be held in the name of the court trustee, we find that the policy considerations underlying AS 45.05.672, i. e., protection of bona fide purchasers, thus fostering an atmosphere of free negotiability, are not offended by the action of the court below. However, we note that the federal act requires that when the period of non-negotiability expires and the stocks become freely negotiable, at that time a re-issuance of the stocks is to occur. 43 U.S.C. 1606(h)(3). For any levy to be valid once the stocks become freely negotiable will require strict compliance with AS 45.- 05.672, thus actual attachment.

joined due to constitutionally defective notice.

We agree that the individual shareholders were indispensable parties to this litigation and find further that Alaska Civil Rule 19 [17] mandates the stockholders be made parties. However, we fail to find constitutionally defective notice which would require reversal of the lower court.

The facts indicate that on October 23, 1974, an amended complaint was filed naming all individual-shareholder defendants. This amended complaint prayed that the action be designated a class action. Judge Lewis thereafter ordered the designation of a defendant class to consist of all defendants in those existing cases where an arrearage of $200 or more was then outstanding.

This complaint was served, or had attempted service made with it, upon all 88 individual shareholder defendants. As to those shareholders actually served, the receipt of process was adequate notice. For those not served, the designation by Judge Lewis of this matter as a class action excused the requirement of actual notice.

We have reviewed the action of the lower court in designating this matter a class action under Alaska Civil Rule 23 [18] and find such a designation proper. We reach this conclusion after finding that common questions of law and fact pertaining to the issue of the stock attachment predominated and that the shareholders actually served and appearing fairly insured the representation of the class.

As its fourth and final contention of error appellant contends that the superior court failed to properly balance the potential burdens to the corporations against the potential benefits to the plaintiffs and society in fashioning its order granting equitable relief. The appellant asserts that a reasonable interpretation of the court's order leaves many questions pertaining to the corporation's duties to its shareholders unanswered. As part of this assertion appellant claims:

. . . the Court's order burdens the corporations by leaving them in perplexity as to who, between the native father given the right to vote and the trustee given legal ownership of the stock, is the "shareholder" for purposes of receiving notice, voting, holding office in the corporation, inspecting books and records, and to whom unrestricted stock should be issued in 1992. . . . [A]ppellant is in doubt as to who, between the native father and the trustee, now has the power to provide for the transfer of the stock by will. . . . The procedural monstrosity advocated by appellees, and accepted by the Court, forced appellant and the other native corporations to incur heavy costs of litigation. . . . [T]he Court's order effectively requires that appellant must maintain two shareholder lists, one showing the trustee as legal owner of the stock, and another showing the native father as owner of the voting right.[19]

As we read the court's order in the instant matter we find no merit to appellant's assertions. The order specifically provides:

the character of the right sought to be enforced for or against the class is
(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;
(2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or
(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought.

17. Alaska Rule of Civil Procedure 19 read at the time of trial in part:
(a) Subject to the provisions of Rule 23 and of subdivision (b) of this rule, persons having a joint interest shall be made parties and be joined on the same side as plaintiffs or defendants.

18. Alaska Rule of Civil Procedure 23 at the time of trial read in part:
(a) *Representation.* If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when

19. Appellant's brief, pages 24–25.

IT IS FURTHER ORDERED that other incidents of stock ownership, including but not limited to the *right to vote and participate in corporate affairs, the right to eventual residual ownership of shares in the named Corporations,* and all other rights to the stock, save and except the annual cash payment or other cash disbursement, are hereby transferred back to the individual. The Court Trustee may not and shall not exercise any discretion as to the ownership of any incidents of the stock other than the cash disbursements.[20]

There can be no reasonable doubt as to who should receive notice of meeting and votes, or who should be allowed to inspect the corporate records. The issue of eventual stock ownership is specifically covered. In actual fact the primary burden to Calista will be the additional burden of keeping a separate list containing two shareholders' names for purposes of the cash disbursement procedure required by the order.

As with all equitable remedies the respective burden and benefits must be weighed; however, here the appellant at most has raised a bookkeeping burden. This burden seems inadequate when contrasted against the benefit to the State in making recoveries of child support arrears, thus assuring that the children of a family in which a marital separation has occurred will receive adequate support without an intolerable additional fiscal burden being placed on the State. However, most critical in our decision today is the narrowness with which the remedy fashioned below achieves the capture of the child support arrearages, for it is done in a manner calculated to disturb as little as possible the Native parent's rights in his corporation stocks. We recognize this as a major consideration when fashioning equitable relief which properly balances the benefits and burdens of the parties before the courts. Accordingly, we AFFIRM IN PART and REMAND IN PART for modification of the order in conformity with this opinion.

20. Record of Appeal, Vol. I, pages 162–163 (emphasis added).