Kenneth J. **LEWIS**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. A–10957.

Court of Appeals of Alaska.

Nov. 8, 2013.

---

Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

\* Sitting by assignment made pursuant to article IV, section 11 of the Alaska Constitution and Administrative Rule 23(a).

Ann B. Black, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: MANNHEIMER, Chief Judge, ALLARD, Judge, and COATS, Senior Judge.\*

## OPINION

COATS, Senior Judge.

Kenneth J. Lewis was convicted of second-degree escape [1] for leaving a halfway house in Anchorage. At trial, Lewis contended that he was not guilty of escape because he believed he had been given permission to leave the halfway house. To rebut this defense, the court permitted the State to admit evidence of Lewis's prior conviction for escape. The court concluded that evidence of the prior conviction was admissible to undercut Lewis's defense that he mistakenly believed he had permission to leave the halfway house. Lewis argues that the trial court erred in making this ruling. We affirm the trial court's decision.

Lewis also argues that, at sentencing, the trial court erred in rejecting his proposed mitigating factor, that his offense was among the least serious conduct included in the definition of the offense. We agree that Lewis established this mitigating factor. We therefore remand the case for resentencing.

### Factual and procedural background

The Department of Corrections placed Kenneth Lewis at the Glenwood Center, which is a halfway house in Anchorage. On May 14, 2010, Lewis returned to the Glenwood Center after an approved release. Upon his return, a breath test revealed that he had consumed alcohol, in violation of his conditions for staying at the Glenwood Center. Lewis was told that as a consequence of this violation he was going to be remanded back to the Department of Corrections.

1. AS 11.56.310(a)(1)(B).

Lewis then left the Glenwood Center. He called the police the next day, and was arrested and charged with second-degree escape.

At Lewis's trial, various staff members at the Glenwood Center testified that they did not have the legal authority to physically stop an inmate from leaving the facility without permission. Several staff members said the policy of the halfway house was to talk to an inmate who was considering leaving the facility to discourage them from leaving and incurring the additional criminal charges that would result. Staff members testified that they had these conversations with Lewis. They also testified that Lewis left the facility without permission.

Lewis conceded that he had these conversations with staff members. But he testified that he also had a conversation with Max Todhunter, the supervisor of the Glenwood Center. He said he asked Todhunter if he could go outside, get some fresh air, and smoke a cigarette, and Todhunter said it was completely up to him. According to Lewis, Todhunter told him not to leave the property and to ring the buzzer on the door when he wanted to come back in. Lewis said he went outside, smoked some cigarettes, and tried to return after about twenty minutes, but that the staff would not let him back in. He said he waited outside the halfway house for about an hour and a half, but no police showed up. Lewis said he found someone with a cell phone and used it to call the police. He was told that a police officer would show up to talk to him, but no officer arrived. So Lewis walked to his brother's house. He eventually called the police from there and was taken into custody. Lewis testified that he had not tried to escape and that the whole incident was a big misunderstanding.

Lewis had also been convicted of escape in 2005 for leaving a halfway house. The State asked the court to admit evidence of that prior conviction on the theory that it was admissible to undermine Lewis's contention that he did not intend to escape in this case. The trial court concluded that the prior escape conviction was admissible for this purpose.

Lewis addressed this 2005 conviction in his testimony. He said he had been sent to a halfway house, that he told the staff he did not want to be there, and that he walked out the front door as soon as they brought him there. He testified that he then entered a plea of guilty to escape.

The prosecutor called Max Todhunter, the supervisor of the halfway house, as a rebuttal witness. According to Todhunter, he told Lewis that if he walked out the door, he would face additional time in prison for leaving. Todhunter said that other staff members had long conversations with Lewis about this, and that Lewis walked out the door anyway. Todhunter testified that he never told Lewis that he could go outside and smoke a cigarette and then come back in. Todhunter testified, "I don't think there's anything I said that would have given him ... a reason to believe the staff would let him back in ... or that he could have permission to ... be outside." Todhunter said that it was his practice to tell inmates that it was ultimately their choice whether or not to walk out the door. He testified that this was the only thing that he said that Lewis could have misconstrued. Todhunter also pointed out that Lewis was intoxicated at the time.

At the conclusion of the evidence, the jury convicted Lewis of escape in the second degree.

### Discussion
#### The superior court did not abuse its discretion in admitting Lewis's prior escape conviction

■ Lewis contends that the superior court abused its discretion by allowing his prior conviction for escape to be admitted into evidence. The resolution of this claim is governed by Alaska Evidence Rule 404(b)(1), which provides:

Evidence of other crimes ... is not admissible if the sole purpose for offering the evidence is to prove the character of a person in order to show that the person acted in conformity therewith. It is, however, admissible for other purposes, including, but not limited to, proof of ... intent ... or absence of mistake or accident.

Under this rule, evidence that a defendant has engaged in other bad acts is not admissible to show the defendant's propensity to engage in such acts. To be admissible, the evidence must be relevant for a case-specific reason, for instance to show that the act was not the result of a mistake or accident. In addition, under Alaska Evidence Rule 403, the court must determine that the probative value of the evidence is not outweighed by the danger that the evidence will result in unfair prejudice.

In the present case, Lewis contended that he had not tried to leave the Glenwood Center, and that the entire incident was the result of a misunderstanding. He claimed he thought he had been given permission to leave the Glenwood Center to smoke cigarettes. There was some evidence to support this claim. No one attempted to keep Lewis from leaving the facility. In addition, the supervisor of the Glenwood Center, Max Todhunter, conceded that there was some possibility that Lewis misunderstood him when he told Lewis it was ultimately his choice whether to leave.

Lewis's prior conviction for escape was admissible to rebut Lewis's claim that he thought he had permission to leave. Lewis testified that in 2005 he told staff at the halfway house that he did not want to be there and walked out the front door as soon as they brought him to the facility. He said he then entered a guilty plea to escape. This 2005 conviction tends to show that Lewis was aware that no one was going to try to stop him when he left the halfway house, that it truly was up to him whether he stayed or left, and that, if he chose to leave, he would face criminal charges. Therefore, Lewis's prior conviction for escape had case-specific relevance to rebut his claim that the charges in this case stemmed from a misunderstanding. We conclude that the superior court did not err in allowing the introduction of Lewis's prior escape conviction.

*Lewis established the mitigating factor that his offense was among the least serious conduct included in the definition of the offense*

[3] As a third felony offender, Lewis faced a presumptive range of 6 to 10 years of imprisonment.[2] The sentencing court was therefore required to impose a sentence of at least six years to serve, unless Lewis established a mitigating factor.[3] Lewis proposed the mitigating factor that his offense was among the least serious conduct included in the definition of the offense.[4]

The sentencing judge concluded that Lewis had not established by clear and convincing evidence that he had any basis for believing he had permission to leave the facility, that he tried to reenter the facility, that he waited outside, or that he telephoned the police to turn himself in shortly after leaving the facility.[5] He did find that Lewis had turned himself in within twenty-four hours of leaving the facility. The judge concluded that Lewis's action in turning himself in was "commendable." But he concluded that Lewis's escape was not among the least serious conduct included in the definition of the offense. He therefore rejected the proposed mitigating factor and imposed the six-year minimum term. The judge stated that, if he were not restrained by presumptive sentencing, he would have imposed a sentence of four years.

In reviewing whether a defendant has established a mitigating factor, we accept the sentencing court's factual findings unless they are clearly erroneous. But in reviewing whether the defendant's conduct was among the least serious conduct included in the definition of the offense, we review the issue *de novo,* as a question of law.[6]

Escape in the second degree criminalizes the act of removing oneself from official detention for a felony or extradition without

**2.** AS 12.55.125(d)(4).

**3.** AS 12.55.155(a)(2).

**4.** AS 12.55.155(d)(9).

**5.** AS 12.55.155(f).

**6.** *State v. Parker,* 147 P.3d 690, 694 (Alaska 2006) (citing *Michael v. State,* 115 P.3d 517, 519 (Alaska 2005)).

lawful authority.[7] The offense encompasses a wide range of conduct, criminalizing escapes from different levels of custody, including maximum security facilities. In attempting to escape or while at large an escapee may engage in dangerous or destructive conduct in attempting to evade capture. Furthermore, law enforcement officials can be expected to attempt to prevent the escape or to arrest the escapee, placing themselves, the escapee, and possibly the public in danger. In addition, when the defendant successfully escapes, the offense may involve substantial absence from custody, a lengthy search by law enforcement, and further danger in apprehending the defendant.

When we consider the range of conduct encompassed by the offense of escape in the second degree, we conclude that Lewis's conduct was among the least serious included in the definition of the offense. Lewis walked away from a minimum security facility. Given the rules of the facility, of which Lewis was aware, no one was placed in danger when Lewis committed his escape. Lewis was in escape status for a short period of time—twenty-four hours. And Lewis turned himself in to the authorities.[8]

*Conclusion*

Lewis's conviction for escape is AFFIRMED. The case is REMANDED for resentencing.[9]

---

**7.** AS 11.56.310(a)(1)(B).

**8.** *Compare Bell v. State,* 658 P.2d 787, 789–90 (Alaska App.1983) (upholding the trial court's rejection of the least serious offense mitigating factor where the defendant claimed he walked away from the Palmer Correctional Center because of a family emergency and was returning to the facility when he was apprehended, but attempted to evade capture by running into the woods when he was seen by correctional officials); *Musser v. State,* Mem. Op. & J. No. 2766, 1993 WL 13156783, at *1–2 (Alaska App. August 18, 1993) (upholding the trial court's rejection of the least serious mitigating factor where the de-

fendant escaped from the Palmer Correctional Facility and fled to Oregon where he was apprehended six months later); *Davis v. State,* Mem. Op. & J. No. 3414, 1996 WL 33686822, at *1, *3 (Alaska App. June 26, 1996) (upholding the trial court's rejection of the least serious offense mitigator where the defendant fled from the police station and had to be apprehended by force, resulting in the injury of a police officer).

**9.** Our disposition of this issue makes moot Lewis's contention that the sentencing court erred in failing to *sua sponte* refer his case to the three-judge panel.