NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska  99501*
*Fax:  (907) 264-0878*
*E-mail:  corrections @ akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| ISAIAH TERMAINE BELCHER, | Court of Appeals No. A-11632 |
| Appellant, | Trial Court No. 3PA-12-3212 CR |
| v. | |
| | O P I N I O N |
| STATE OF ALASKA, | |
| Appellee. | No. 2499 — May 6, 2016 |

Appeal from the Superior Court, Third Judicial District, Palmer, Pat L. Douglass, Judge.

Appearances:  Nancy Driscoll Stroup, Attorney at Law, Palmer, for the Appellant.  Timothy W. Terrell, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before:  Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge SUDDOCK.

---

[*]    Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

A jury found Isaiah Termaine Belcher guilty of second-degree theft[1] for stealing a television and a Blu-ray DVD player from the Wasilla Walmart. At trial, the State offered evidence of Belcher's prior conviction for third-degree theft. Over defense objection, Superior Court Judge Pat L. Douglass admitted evidence of the prior conviction as probative of identity, intent, common scheme or plan, and absence of mistake.

On appeal, Belcher argues that the evidence was inadmissible under Alaska Evidence Rule 404(b)(1). He is correct; as explained below, the evidence had no relevance beyond establishing Belcher's character as a thief. But the error was harmless because the State presented overwhelming evidence of guilt.

*Background facts*

On November 23, 2012 — "Black Friday" — Walmart loss-prevention officer Dean Brown heard the electronic alarm system at the doorway go off, and shortly thereafter he observed Belcher walking through the store's vestibule with a television in his cart. Brown followed Belcher outside the store, and Belcher turned and approached him. Belcher told Brown that the alarm had triggered because of DVDs in his cart that he had forgotten to pay for. He explained that after the alarm sounded, he decided he no longer wanted them and returned them to the cashier.

According to Brown's testimony at trial, he expressed skepticism about Belcher's story and asked to see Belcher's receipt. Belcher did not have one. When Brown asked Belcher how he would return the merchandise if there was something wrong with it, Belcher replied that he would just pawn it instead of returning it to the store.

---

[1] Former AS 11.46.130(a)(1).

Brown jotted identifying data from Belcher's driver's license and vehicle license plate number. After reviewing surveillance footage and determining that Belcher had not paid for the merchandise, Brown contacted the Wasilla Police Department to report the theft. Officer Patrick Kruchowski responded to the call, and Brown told him that Belcher had stolen a television and a Blu-ray DVD player valued at $713 and $98, respectively.

The State subsequently indicted Belcher for second-degree theft.[2]

*Proceedings*

The State filed a notice of its intent to introduce Belcher's year-old conviction for third-degree theft. According to police reports attached to the notice, Anchorage police officers had received a report of attempted shoplifting (not involving Belcher) from a Fred Meyer store. One week later, Anchorage police stopped a car belonging to one of the suspects in that incident.

Belcher was in the back seat of the vehicle, along with $895 worth of merchandise later determined to be stolen from Bed Bath & Beyond. Belcher told Officer Boaz Gionson that the items were his and that he had bought them, but he told another officer, Robin Nave, that the items did not belong to him. Officer Nave later received a phone call from Belcher, requesting return of the items. Belcher told Officer Nave that he had purchased the items without bothering to keep the receipt because the items were intended as Christmas gifts. Officer Nave did not return the merchandise, and Belcher eventually pled guilty to third-degree theft of that merchandise.

---

[2] Former AS 11.46.130(a)(1) (2012) (defining the value of second-degree theft as theft of property or services with a value of $500 to $25,000).

Belcher objected to the State's notice of intent to offer this evidence, arguing that the matter had no relevance beyond Belcher's propensity to shoplift and was highly prejudicial. The judge deferred ruling on the matter until hearing the State's case and the defense theory of the case.

At trial, loss-prevention officer Brown showed the jury surveillance video footage of Belcher. The video first depicted Belcher placing the television and Blu-ray DVD player into his shopping cart. It also showed him selecting a number of DVDs and then walking past the cash registers into the store's vestibule.

The video then depicted Belcher leaving the shopping cart in the vestibule (after the store's alarm system sounded) while he returned the DVDs to a cash register station. It then showed Belcher returning to his cart and exiting the store. The surveillance video also showed Brown emerging from the store's security office, Belcher and Brown talking outside the store, and Brown following Belcher to his car to record his license plate number.

During cross-examination, Belcher's defense attorney inquired whether the low resolution of the video left doubt that its subject was Belcher. Brown responded that the resolution was better on his computer and also noted that he had the benefit of an in-person encounter with Belcher, which the video recorded. When the defense inquired whether Brown had accurately recorded Belcher's license plate number, Brown responded that he had "[w]alked right up to the bumper."

Brown also explained that he checked Walmart's computer system to ensure that no television nor Blu-ray DVD player had been sold while Belcher was present in the store. The defense attorney suggested that Brown may have mis-remembered which items were in Belcher's cart, thus explaining the lack of purchase history. Brown responded that the store sold few brands of televisions and that he had carefully noted and searched for the specific television he saw in Brown's shopping cart.

After Brown and Officer Kruchowski testified, the prosecutor renewed her request to introduce evidence of Belcher's prior theft conviction. The defense attorney argued that the conviction was more prejudicial than probative under Alaska Evidence Rule 403.

The judge ruled that evidence of the prior crime was admissible evidence because, she concluded, both identity and mistake were part of the defense case, and she found the probative value outweighed the prejudicial effect of the evidence. But she limited evidence of the prior theft to Belcher's claim that he had bought the merchandise and did not have a receipt for it. Subsequently, Officers Gionson and Nave testified, and the judgment for Belcher's prior conviction was admitted into evidence.

Following the parties' final arguments, the judge read the jury an instruction limiting the purposes for which the prior-crime evidence could be considered: specifically, to the issues of identity, intent, common scheme or plan, or absence of mistake. The jury convicted Belcher of second-degree theft. This appeal followed.

*The trial court erred by admitting the evidence of Belcher's prior theft*

The trial court admitted the evidence of Belcher's prior theft under several different theories. We will address those theories one by one, explaining why none of them are supported by the record.

First, the trial court admitted this evidence as probative of Belcher's identity. The State concedes that this was erroneous, and we find the State's concession well founded.

Prior-crime evidence may only be admitted to prove identity where identity is in issue.[3] Though Belcher's attorney briefly questioned Brown about his identification of Belcher by pointing out the grainy quality of the surveillance video and questioning him about accurately recording Belcher's license plate number, this isolated exchange did not meaningfully put identity in issue. Belcher's theory of the case — the theory that was argued to the jury — was that he paid for the items before exiting the store, not that Brown misidentified him. The evidence thus had no relevance as to Belcher's identity and should not have been admitted on this basis.

The superior court also admitted the evidence of Belcher's prior theft under the theory that it tended to prove intent.

Intent may become an issue in a shoplifting case if, for example, a defendant claims that he merely forgot to pay for an item, or that he intended to re-enter the store to pay. But here Belcher's attorney argued something quite different: the defense attorney asserted that Belcher's statements to the loss-prevention officer were correct, and that he had in fact paid for the goods. Thus, the attorney argued a defense to the *actus reus* of the crime of theft (taking goods without paying) rather than to the *mens rea* element (intent to deprive).[4]

When the prosecutor delivered her summation to the jury, she referred to Belcher's prior conviction as relevant to "intent." But a close examination of the prosecutor's argument shows that she asked the jurors to infer, from Belcher's prior crime, that he had the *capacity* to form the intent to steal — in other words, that he had the character of a thief:

---

[3]   *See Coleman v. State*, 621 P.2d 869, 874-75 (Alaska 1980); *Moor v. State*, 709 P.2d 498, 506 (Alaska App. 1985) ("[T]he issue upon which the [404(b)(1)] evidence is offered must be truly disputed in the case.").

[4]   AS 11.46.100(1).

> [H]ow do we know that the defendant is *capable of* forming [the] intent to deprive ... another of their property[?] ... [T]hat's one of the limited reasons you can look at [Belcher's] other conviction. (emphasis added)

Effectively, the prosecutor employed the superfluous issue of "intent" to inject propensity evidence into the case. Offered for this purpose — to show that Belcher was *capable of* forming an intent to steal — the evidence proved nothing beyond his propensity to shoplift and therefore was squarely proscribed by Alaska Evidence Rule 404(b)(1).

The State alternatively argues that evidence of Belcher's prior theft conviction was properly admitted to prove a common scheme or plan. In support of its argument, the State relies on *Cohen v. State*.[5] In *Cohen*, this Court upheld the admission of prior bad acts evidence when the evidence was probative as to a distinctive pattern of criminal behavior — "Cohen had repeatedly engaged in a distinctive set of grooming or courtship rituals with teenage girls."[6]

But the State alleged no such distinctive pattern of conduct in this case. In fact, to the extent the instant charge involved a unique plan of action — using the DVDs as an alarm system decoy to steal the television and Blu-ray DVD player — there was no evidence that the prior crime involved similar conduct.

And as this Court explained in *Bolden v. State*, "[t]o be properly admissible under Rule 404(b) it is not enough to show that each crime was 'planned' in the same way; rather, there must be some overall scheme of which each of the crimes is but a

---

[5]    2014 WL 5799224 (Alaska App. Nov. 5, 2014) (unpublished).

[6]    *Id.* at \*8; *see also Smithart v. State*, 946 P.2d 1264, 1269-73 (Alaska App. 1997), *rev'd on other grounds*, 988 P.2d 583 (Alaska 1999).

part."[7]  Here, there was no such overarching scheme.  The judge erred in admitting the prior offense as tending to prove scheme or plan.

As yet another alternative ground of relevance, the State asserts that Belcher's prior theft conviction tended to prove an absence of accident or mistake.

In the trial court, the prosecutor argued that Belcher's prior shoplifting conviction was admissible because it tended to "disprove[] a mistake that [Belcher] simply threw out the receipt there while at the store."

This was a misuse of the word "mistake" — which, in the context of Evidence Rule 404(b)(1), refers to conduct that is unwitting or that is performed as a result of a misunderstanding.  The prosecutor was not arguing that Belcher made a *mistake* when he said that he had thrown away the receipt for the merchandise.  Rather, the prosecutor was arguing that Belcher's prior theft conviction tended to prove that he *lied* when he said this.  This argument rested wholly on an inference based on Belcher's character — the purpose forbidden by Evidence Rule 404(b)(1).

After hearing the prosecutor's argument, the judge ruled that the evidence of Belcher's prior theft conviction was relevant to the issue of "mistake."  But we are unable to tell from the record if the judge adopted the prosecutor's mistaken concept of mistake, or if the judge had something else in mind.

On appeal, the State recasts the issue.  The State argues that evidence of Belcher's prior theft was relevant to rebut a claim of "mistake" because, at trial, Belcher's attorney argued that anyone who believed that Belcher was trying to steal the Walmart electronics was laboring under a mistake.

The State's proposed formulation of "mistake" is based on a misunderstanding of Alaska Evidence Rule 404(b)(1).  When this evidence rule speaks

_____

[7]  *Bolden v. State*, 720 P.2d 957, 961 n.2 (Alaska App. 1986).

of "mistake," it is not referring to a defense claim that anyone who believes the defendant to be guilty is mistaken. Rather, when Rule 404(b)(1) speaks of "mistake" it is referring to a defense claim that the defendant's conduct was performed unwittingly or accidentally, or under a misapprehension of the circumstances.

For instance, in *Adkinson v. State*, the defendant was tried for manslaughter after he shot and killed a trespasser. The defendant asserted that he did not intentionally point his firearm at the victim — that if he pointed the gun at the victim, it was inadvertent.[8] The supreme court concluded that, given this defense, the trial judge properly allowed the State to introduce evidence of prior incidents where the defendant pointed firearms at trespassers.[9]

Similarly, in *Lewis v. State*, the defendant was charged with escape after he left a residential corrections center. At trial, the defendant argued that he was not guilty because he mistakenly believed that he had received permission to leave the center.[10] This Court held that, given this defense, the trial judge properly allowed the State to introduce evidence of the defendant's prior conviction for escape.[11]

See also *Khan v. State*, where the defendant was on trial for fraudulently misrepresenting his assets when he applied for court-appointed counsel. Khan's defense at trial was a combination of mistake and innocent intent: his attorney argued that Khan was emotionally distraught at the time he filled out the financial affidavit, and that he either mistakenly or carelessly declared that he had no income and no assets.[12] This

---

[8]   *Adkinson v. State*, 611 P.2d 528, 531 (Alaska 1980).

[9]   *Id.* at 532.

[10]   *Lewis v. State*, 312 P.3d 856, 859 (Alaska App. 2013).

[11]   *Id.*

[12]   *Khan v. State*, 204 P.3d 1036, 1039 (Alaska App. 2009).

Court held that the trial judge properly allowed the State to introduce evidence of Khan's prior fraudulent claim for unemployment benefits.[13]

Belcher made no such claim of mistake — no claim that he inadvertently failed to pay for the electronics or that he mistakenly believed that he had paid for them when, in fact, he had not. Rather, as we explained above, Belcher asserted that he *had* paid for the items and that the State was simply wrong when it alleged that he had not paid for them.

Accordingly, the trial judge erred when she admitted evidence of Belcher's prior theft under a theory of "mistake."

*A deeper look at the admissibility of past-misconduct evidence based on its purported similarity with the present crime*

The judge in this case found the "pattern" of Belcher's prior theft to be "almost [identical to] what [is] alleged now in this case." She employed this perceived similarity to justify admission of the prior shoplifting for the issues of identity, mistake, and common scheme or plan. But the judge could not meaningfully compare the two crimes because neither she nor the prosecutor knew how Belcher committed the earlier theft. Belcher was not arrested at the scene of that earlier crime, nor in the act of stealing the merchandise. Rather, he was later found in possession of the stolen merchandise.

As the judge noted, in both instances Belcher had no receipt for the merchandise. But his proffered explanations were significantly different: in the earlier episode, he claimed that he did not keep the receipt because the items were intended as Christmas presents; as to the Walmart electronics, Belcher said that if the goods later proved to be defective, he intended to pawn them rather than return them.

---

[13]   *Id.*

Thus, the trial judge had no basis for concluding that these two thefts constituted related manifestations of a single scheme or plan, or that the prior theft demonstrated anything about Belcher's intent during the Walmart episode. The two thefts were linked only by a feature common to most thefts: the absence of a receipt.

The judge's ruling was essentially based on the premise that if Belcher was the kind of person who would commit theft before, then it was more likely that he was guilty of theft now. But as this Court explained in *Smithart v. State*, "[i]f evidence has no genuine purpose other than to show the defendant's character and the consequent likelihood that the defendant acted in conformity with that character during the episode being litigated, then Rule 404(b)(1) declares that the evidence shall not be admitted."[14]

*The trial judge's obligation when the government wishes to offer prior-crime evidence*

More than thirty years ago, in *Moor v. State*, this Court optimistically predicted that if we required the State to give advance notice of its intent to offer Rule 404(b) evidence, such notice would guarantee that "the trial court [would] carefully scrutinize the proffered reasons for the use of the evidence."[15] Trial judges would thereby require the State to demonstrate that the evidence had "[true] relevance apart from propensity."[16]

But *Moor*'s requirement of advance notice is only effective if trial judges subject the government's offer of proof to rigorous examination. Evidence Rule 404(b)(1) can be difficult to apply. Often, the difficulty arises because many of the

---

[14]  *Smithart*, 946 P.2d at 1270-71.

[15]  *Moor v. State*, 709 P.2d 498, 506 (Alaska App. 1985).

[16]  *Id.*

words used in Rule 404(b)(1) — "intent," "motive," "plan," "knowledge," and "mistake" — must be understood in a limited technical sense, rather than in the broader sense in which they are used in everyday speech.

Mindful of these terms of art, the judge must carefully analyze the prosecutor's offer of proof in light of the facts of the defendant's specific case — both the evidence presented and the way in which the case is being argued by the parties. The judge's task is to determine (1) whether the prior-crime evidence is relevant to an issue that is actually contested and, if so, (2) whether the prior-crime evidence is genuinely relevant for a purpose other than to establish that the defendant characteristically commits the type of offense charged.

*Why we conclude that the erroneous admission of Belcher's prior theft was harmless*

In the case of a non-constitutional evidentiary error, this Court will only reverse if the error "appreciably affected the verdict."[17] Here, the State's case against Belcher was overwhelming. At trial, the State introduced surveillance video that depicted Belcher's activities in the store, including his selection of the television and then the Blu-ray DVD player. Of the twelve minutes that Belcher remained in the store after he selected the television, he is visible in the footage for all but one minute and thirty-five seconds.

Though it is theoretically possible that Belcher could have purchased the television during this gap in the footage, the State rebutted this possibility in several ways. The incident occurred on "Black Friday" — the most chaotic shopping day of the year — making it unlikely that Belcher could have checked out that quickly. Indeed the

---

[17] *Love v. State*, 457 P.2d 622, 634 (Alaska 1969).

video showed that the store was extremely busy. And the loss-prevention officer testified that he searched the store's computer system and found no record of a customer purchasing the television and the Blu-ray DVD player while Belcher was in the store.

Further, Belcher's statements to the loss-prevention officer significantly undermined his theory of the case. Reasonable jurors could conclude that Belcher would not purchase an expensive electronics item without retaining the receipt in case the item did not function properly. Reasonable jurors could also conclude that Belcher's purported intention to pawn the television if it did not function properly was not credible.

We conclude that, in light of the overwhelming evidence of Belcher's guilt, the erroneous admission of Belcher's prior shoplifting conviction did not appreciably affect the jury's verdict.

*Conclusion*

We AFFIRM the judgment of the superior court.