MAASSEN, Justice.
I. INTRODUCTION
A motorist appeals the superior court's dismissal of his claim that the Division of Motor Vehicles (DMV) failed to properly transfer a motorcycle endorsement from his California driver's license to his new Alaska license in 1992. The court decided that the motorist's claim, filed in 2017, was barred by the statute of limitations, the doctrines of laches and exhaustion of administrative remedies, and the governing DMV regulations. The court also awarded the DMV attorney's fees calculated pursuant to the Alaska Civil Rule 82(b)(2) schedule. The motorist appeals.
We affirm the superior court's decision primarily on laches grounds. The motorist filed his claim 25 years after the DMV's alleged mistake, long past the time the DMV could reasonably be expected to have retained any evidence relevant to its defense. We also affirm the award of attorney's fees, which the motorist did not oppose in the superior court, because the scheduled award is not plainly erroneous.
II. FACTS AND PROCEEDINGS
This case was decided on the pleadings; we therefore take as true the following allegations of the complaint.[1] Thomas I. Anderson Sr. completed a "Motorcycle Safety Rider's Course" at Fort Ord, California, in 1983, while he was serving in the military. As a result he "[w]as certified through the Motorcycle Safety Foundation" and was "informed ... that the certification was good in all 50" states. He moved to Alaska in 1987, and his California driver's license, with its motorcycle endorsement, allowed him to continue operating his motorcycle legally on Alaska's roads as long as he continued on active military duty.
Anderson was discharged in 1992 and acquired an Alaska driver's license. Although he did not notice at the time, his Alaska license "did not reflect the motorcycle endorsement *219 that was on the California [l]icense," and the DMV failed to inform him that the endorsement was not transferred "or that there were other requirements to continue to operate his motorcycle on Alaska['s] highways and/or roads." Anderson nonetheless continued driving his motorcycle until 2007, when he registered a new "motorcycle/scooter" with the DMV and, at about the same time, learned that his license lacked a valid motorcycle endorsement.[2] When he asked for one, the DMV informed him that he needed first "to take a written and road test[ ] and complete a motorcycle safety rider's course." Anderson took and passed the written test "involuntar[il]y" in 2007, but since then he has declined to take the road test and safety course on the ground that his 1983 training in California, along with the DMV's failure to transfer the California endorsement in 1992, entitles him to an Alaska endorsement without further proof of his competence. Several times over the past decade he has asked the governor's office to help him resolve the matter, though without success.
On March 31, 2017, Anderson again renewed his driver's license and again asked the DMV to give him a motorcycle endorsement. This time he showed a photocopy of his decades-old, expired California driver's license, but the DMV again "failed to reinstate" his motorcycle endorsement.
In May 2017, proceeding pro se, Anderson filed a complaint in which he "respectfully ask[ed] the court to mandate that [the DMV] restore [his] motorcycle endorsement ... as it should have been done" in 1992 when he first surrendered his California license in exchange for an Alaska one. The DMV filed an answer and a few months later moved for judgment on the pleadings pursuant to Alaska Civil Rule 12(c). The DMV argued that Anderson's claim accrued in 1992, when he transferred his license, and was now barred by a 10-year statute of limitations. The DMV also argued that "forc[ing it] to address an alleged error that occurred decades ago" would violate due process, because "[t]he records related to this transaction are long gone and it would likely be impossible to reconstruct what occurred through witness testimony." The DMV also relied on the doctrine of laches and Anderson's failure to exhaust his administrative remedies. Finally, the DMV relied on its regulations to contend that it lacked authority to transfer an endorsement from a license that had expired so long ago.[3]
Anderson did not file an opposition to the motion, and the superior court granted it, relying "on the legal analysis in ... the DMV's motion." The court awarded the DMV attorney's fees of $ 809.67 pursuant to the schedule of Alaska Civil Rule 82(b)(2) for cases resolved short of trial and without a money judgment.
Anderson now appeals.
III. STANDARD OF REVIEW
"We review the grant of a motion for judgment on the pleadings de novo."[4] "The application of laches may raise three issues for review."[5] The first - whether the equitable defense of laches may be applied to the plaintiff's claim - presents a question of law we review de novo.[6] The second - "whether the facts demonstrate an unreasonable delay and a resulting prejudice" - presents questions of fact we review for clear error.[7] And the third issue - whether, based *220 on the facts, it was appropriate to apply the laches doctrine - is a question reserved to the superior court's discretion, and we review it to determine whether that discretion has been abused.[8] "The trial court has broad discretion to sustain or deny a defense based on laches."[9]
The interpretation of a regulation is a question we review de novo.[10] We review issues not properly raised in the trial court for plain error.[11] "A plain error involves an 'obvious mistake' that is 'obviously prejudicial.' "[12]
IV. DISCUSSION
A. The Superior Court Did Not Abuse Its Discretion By Applying The Laches Defense To Anderson's Claim For Injunctive Relief.
The specific relief Anderson seeks by his complaint is a "mandate that the Alaska Division of Motor Vehicles restore [his] motorcycle endorsement ... as it should have been done at the time of [transference], at no cost to [him]." Traditionally, a suit asking the court to order a government official to act in a certain way is an action for mandamus.[13] The writ of mandamus was abolished in Alaska many decades ago by court rule, but the type of relief once provided by the writ may still be "obtained by appropriate action or by appropriate motion under the practice prescribed in" the Alaska Civil Rules.[14] One appropriate action in the nature of mandamus that is recognized by the Civil Rules is an action for a mandatory or reparative injunction.[15] Claims for injunctive relief are equitable in nature,[16] and the equitable doctrine of laches is therefore available as a defense to them.[17]
The defense of laches requires that the defendant "show two 'independent' elements": "(1) that the plaintiff has unreasonably delayed in bringing the action, and *221 (2) that this unreasonable delay has caused undue harm or prejudice to the defendant."[18] Both elements are plainly met in this case on the undisputed facts. The crux of Anderson's complaint is that the DMV acted unlawfully in 1992, when it failed to transfer the motorcycle endorsement from his California license to his replacement Alaska license. He claims he was surprised 15 years later when, in 2007, a friend informed him that his license lacked the proper endorsement. Even assuming it was reasonable for Anderson to be unaware of this himself for 15 years,[19] it was not reasonable for him to wait yet another ten years to file suit complaining of alleged DMV misfeasance that by then was 25 years in the past. Many courts have found delays of this length and even much shorter to be unreasonable as a matter of law for laches purposes.[20]
Prejudice is also apparent on the undisputed facts. As the DMV points out, its document retention policy is required by statute and set out in regulation, 2 AAC 90.475. The regulation requires that records of non-commercial driver's license applications, denials, suspensions, revocations, cancellations, and disqualifications "will be retained by the department for a period of 15 years following the entry into the department's database," after which the DMV "will destroy" the records "with no further activity" pursuant to the public records maintenance requirements of AS 40.21.[21] Anderson has not disputed - either here or in the superior court - the DMV's claim that it would no longer have records of a 1992 licensure. And we agree with the DMV that it is highly unlikely to find witnesses who, especially in the absence of any documentary record, can testify about the circumstances of Anderson's 1992 application.
We have approved use of the laches doctrine in circumstances where the delay was less obviously unreasonable and prejudicial. In Kollander v. Kollander we reviewed a superior court's finding that a former wife unreasonably delayed in bringing a claim for pension benefits under a 1992 qualified domestic relations order.[22] The pension administrator had paid the former wife her "share of her former spouse's pension in accelerated lump sum payments from 2007 to 2008," but in 2012 she brought a claim asserting that she was entitled to lifetime monthly payments *222 instead.[23] The superior court found that her claim was barred by laches, and we affirmed.[24] With regard to the element of unreasonable delay, we noted that the former wife had received a letter explaining the accelerated payout in 2007, had accepted payments thereafter, and yet had taken no action for five years "other than attempted communication with [the pension administrator] and consultation with several attorneys, none of whom took any action on her behalf."[25] As for prejudice, we affirmed the trial court's finding based primarily on the "dissipation and reasonably expected loss of evidentiary materials" over the years since the parties' property division.[26]
In Laverty v. Alaska Railroad Corp. , we reviewed the superior court's decision to apply laches to a citizen-taxpayer's suit to enjoin enforcement of a contract for the extraction of gravel near a residential neighborhood.[27] The citizen-taxpayer filed suit a little over a year after learning of the contract, but we noted that he had exhausted his "attempts to resolve his grievances without litigation ... more than four months before he brought suit" and in the meantime knew that the contractor "had undertaken an expensive rezoning and conditional use permit application process."[28] We concluded that under the circumstances we were "left with no definite and firm conviction that the superior court abused its discretion in applying laches as a defense to [the plaintiff's] request to enjoin performance of the gravel contract."[29]
We conclude that, on the undisputed facts, the superior court did not abuse its discretion by applying the doctrine of laches to bar Anderson's claim that the DMV acted improperly in 1992 when it allegedly failed to transfer his California motorcycle endorsement to his Alaska license.
B. The DMV's Regulations Did Not Require It To Issue Anderson A Motorcycle Endorsement In 2007 Or 2017.
Anderson appears to allege that the DMV compounded its 1992 mistake on two subsequent occasions: in 2007, when it "allowed [Anderson's] registration and collection of fees for a motorcycle/scooter" while denying him a motorcycle endorsement; and again in 2017, when it once more refused to issue the endorsement despite the fact that Anderson showed DMV personnel a photocopy of the California driver's license he had surrendered in 1992. But the action Anderson demanded of the DMV was not required by its governing regulations.[30]
First, the regulations do not provide for transfer of an out-of-state motorcycle endorsement that expired many years ago. Renewal of expired endorsements does not appear to be separately addressed, but 2 AAC 90.420(h) provides that the "renewal of a license that has expired for more than one year" (emphasis added) must involve a road test "[u]nless the applicant is eligible for a waiver under (j), (l ), or (n) of this section." Subsection (j) - the only one of the three waiver sections relevant here[31] -allows waiver of the road test only if the applicant's driver's license expired "less than five years from the current date of application." As of 2007, when Anderson first sought waiver of the road test, his motorcycle endorsement had been expired for at least 15 years.
Second, while the regulations do provide for waiver of the motorcycle skills test in some circumstances, they do not require it here. 2 AAC 90.420(k) provides that the *223 DMV "may waive the motorcycle skills test for an applicant who submits to the department proof of the applicant's successful completion of a Motorcycle Safety Foundation Course or another motorcycle safety program or course acceptable to the department." "[T]he term 'may' generally denotes permissive or discretionary authority."[32] The DMV's regulations do not further define the limits to its discretion, but its manual informs the public that waiver based on a safety course completion certificate "is valid to waive the road test for one year."[33] According to Anderson, he completed his safety course in 1983, 24 years before he asked the DMV to give him credit for it. The DMV's refusal to do so is consistent with its regulatory authority, as well as with the State's "compelling interest in maintaining highway safety by ensuring that only qualified drivers operate motor vehicles."[34]
We conclude that, in light of the DMV's governing regulations, the superior court did not err by dismissing Anderson's claims based on his 2007 and 2017 requests that the DMV transfer his long-expired California motorcycle endorsement.
C. There Is No Plain Error In The Superior Court's Award Of Attorney's Fees Pursuant To The Rule 82(b)(2) Schedule.
Finally, Anderson challenges the superior court's award of attorney's fees, arguing that he cannot afford to pay them. He did not oppose the DMV's attorney's fees motion in the superior court, however, so we review his challenge only for plain error.[35]
Alaska Civil Rule 82(b)(2) provides that for cases involving no money judgment and resolved short of trial, "the court shall award the prevailing party ... 20 percent of its actual attorney's fees which were necessarily incurred." The superior court adhered to the schedule in this case when it awarded the DMV $809.67, calculated as 20 percent of the DMV's reasonable and actual attorney's fees. We have repeatedly held that "awards of attorney's fees made pursuant to the schedule set out in Rule 82 are presumptively correct, and the superior court need not make any findings in support of the award."[36] Besides citing his alleged inability to pay - which he did not argue below and was therefore never developed as a factual matter - Anderson does not explain how the court abused its discretion. We see no plain error in the presumptively correct award.
V. CONCLUSION
The judgment of the superior court is AFFIRMED.

State v. Jennings , 555 P.2d 248, 251 (Alaska 1976) ("In reviewing [a motion for judgment on the pleadings], all well-pleaded allegations of the non-moving party must be accepted as true.").

Anderson explained at oral argument that he discovered his lack of the proper endorsement not from the DMV but from a friend who looked at his license and saw that the endorsement was missing.

2 Alaska Administrative Code (AAC) 90.420(j) (2019) ("The department will waive the road test requirement ... for an applicant for ... renewal of a driver's license if the (1) applicant previously possessed the same class of driver's license [from] ... another state ... and (2) driver's license was expired ... less than five years from the current date of application.").

Cornelison v. TIG Ins. , 376 P.3d 1255, 1267 (Alaska 2016).

Kollander v. Kollander , 322 P.3d 897, 902 (Alaska 2014) (quoting Burke v. Maka , 296 P.3d 976, 979 (Alaska 2013) ).

Id.

Id. (quoting Burke , 296 P.3d at 979 ).

Id. at 903.

Keener v. State , 889 P.2d 1063, 1066 (Alaska 1995).

Pease-Madore v. State, Dep't of Corr. , 414 P.3d 671, 674 (Alaska 2018).

Riddle v. Lanser , 421 P.3d 35, 52 (Alaska 2018).

In re Hospitalization of Gabriel C. , 324 P.3d 835, 838 (Alaska 2014) (quoting Adams v. State , 261 P.3d 758, 773 (Alaska 2011), overruled on other grounds by In re Hospitalization of Naomi B. , 435 P.3d 918 (Alaska 2019) ).

See Wade v. Dworkin , 407 P.2d 587, 587 (Alaska 1965) (characterizing an action "which sought to require the Secretary of State to order a recount of the votes which had been cast" in a particular election district as an action "in the nature of mandamus"); Mandamus , Bryan A. Garner, Dictionary of Legal Usage (3d ed. 2011) (identifying mandamus as a writ issued by "a superior court ... to compel a lower court or a government officer to perform mandatory or purely ministerial duties correctly").

Alaska R. Civ. P. 91(b) ; see Wade , 407 P.2d at 587 n.1 (citing rule).

See Alaska R. Civ. P. 65 (establishing procedure for issuance of injunctions). A "mandatory injunction 'orders an affirmative act or mandates a specified course of conduct.' " Cook Inlet Fisherman's Fund v. State, Dep't of Fish & Game , 357 P.3d 789, 794 n.11 (Alaska 2015) (quoting Mandatory Injunction , Black's Law Dictionary (10th ed. 2014)). "A reparative injunction is an equitable remedy that 'order[s] defendants not only to refrain from engaging in wrongful conduct in the future, but also to take actions that alleviate some of the harm caused by their past conduct." Carlson v. Renkes , 113 P.3d 638, 640 n.2 (Alaska 2005) (alteration in original) (quoting Rhonda Wasserman, Equity Transformed: Preliminary Injunctions to Require the Payment of Money , 70 B.U. L. Rev. 623, 630 n.23 (1990) ). See Miguel v. McCarl , 291 U.S. 442, 452, 54 S.Ct. 465, 78 L.Ed. 901 (1934) (holding that a request for retirement pay via mandatory injunction was "in effect equivalent to a writ of mandamus, and governed by like considerations"); Fallini v. Hodel , 783 F.2d 1343, 1345 (9th Cir. 1986) ("When the effect of a mandatory injunction is equivalent to the issuance of mandamus it is governed by similar considerations.").

See State v. First Nat'l Bank of Anchorage , 660 P.2d 406, 424 (Alaska 1982) (holding that defendant was not entitled to jury trial because the right does not apply "[w]hen only equitable relief is sought," and "the State sought injunctive and restitutory relief only"); Calista Corp. v. Deyoung , 562 P.2d 338, 339 (Alaska 1977) (stating that "[t]his is an equitable action in the nature of a complaint for injunctive relief").

City & Borough of Juneau v. Breck , 706 P.2d 313, 317 (Alaska 1985) (holding "that the equitable defense of laches is a bar to [plaintiff's] claims of injunctive relief").

Id. at 315 (citing Moore v. State , 553 P.2d 8, 15 (Alaska 1976) ).

See Ferrell v. Baxter , 484 P.2d 250, 263 (Alaska 1971) ("It is both just and accurate to presume that all reasonable drivers know and obey the law."); Santos v. District of Columbia , 940 A.2d 113, 117 (D.C. App. 2007) ("Driver's licensing schemes are ubiquitous and familiar to all motorists, and compliance with their requirements is not onerous."); State v. DeJesus , 216 Neb. 907, 347 N.W.2d 111, 115 (1984) (stating that defendant "is presumed to know the requirements of" state statutes regarding driver's licenses).

See, e.g. , EEOC v. Propak Logistics, Inc. , 884 F.Supp.2d 433, 443 (W.D.N.C. 2012) (holding that EEOC's seven-year delay in pursuing discrimination claim against employer was unreasonable as matter of law); Hot Wax, Inc. v. Turtle Wax, Inc. , 27 F.Supp.2d 1043, 1049 (N.D. Ill. 1998) ("We find that Hot Wax's twenty-year delay [in filing false advertising claim against competitor] is unreasonable as a matter of law."); Magic Kitchen LLC v. Good Things Int'l, Ltd. , 153 Cal.App.4th 1144, 63 Cal.Rptr.3d 713, 726 (2007) (holding that ten-year delay in pursuing trade dress infringement claim was unreasonable as a matter of law); In re First Baptist Church of Webster , 178 Kan. 123, 283 P.2d 503, 505 (1955) (finding that 23-year delay in church hierarchy's suit to dissolve local church was unreasonable as matter of law); Town of Brewster v. Sherwood Forest Realty, Inc. , 56 Mass.App.Ct. 905, 778 N.E.2d 924, 926 (2002) ("Whether the owner delayed unreasonably in seeking to vacate a foreclosure decree after learning of its entry is a question of fact, but we agree with the judge that the twenty-three year delay here - a time longer than the statute of limitations for recovery of land - was unreasonable delay as a matter of law."); Christian v. Christian , 985 S.W.2d 513, 515 (Tex. App. 1998) (holding that where divorced spouse "made no effort to prosecute her contempt motion" for "over thirteen years," the delay was "unreasonable as a matter of law, and the trial court had no discretion to conclude otherwise").

See also 4 AAC 59.015(a) (2016) (requiring every state agency to "prepare a records retention schedule for all agency records and submit the schedule to the state archivist"); AS 40.21.030(b)(11) (requiring state archivist to "receive records retention schedules from the agencies and submit them to the attorney general for review and approval").

322 P.3d 897, 899 (Alaska 2014).

Id.

Id. at 899, 906.

Id. at 904.

Id. at 905.

13 P.3d 725, 727-28 (Alaska 2000).

Id. at 729.

Id.

Anderson does not challenge the regulations' validity, arguing instead that the DMV failed to comply with them.

Subsection (l ) applies to an applicant for "a Class R license" (for operating ATVs and snowmachines), see 2 AAC 90.210(b)(2)(G) (2019), and subsection (n) applies to an applicant "with military commercial motor vehicle experience who seeks a commercial driver's license."

Garrison v. Dixon , 19 P.3d 1229, 1236 (Alaska 2001) (alteration in original)(quoting Gerber v. Juneau Bartlett Mem'l Hosp. , 2 P.3d 74, 76 (Alaska 2000) ).

Alaska Dep't of Transp., Div. of Motor Vehicles, Motorcycle Operator Manual ii (2015), http://doa.alaska.gov/dmv/dlmanual/mcman.pdf; see also Motorcycle License, Dep't of Admin ., http://doa.alaska.gov/dmv/akol/motor.htm (last visited Feb. 28, 2019) ("An applicant for an M1, M2, or M3 license may have the written and road testing requirements waived by completing a Motorcycle Safety Foundation course and presenting the completion certificate to the DMV. The certificate is valid to waive the test for the current or previous calendar year.").

State v. Terry , 232 N.J. 218, 179 A.3d 378, 387 (2018) ; see State v. Arnold , 379 N.W.2d 322, 324 (S.D. 1986) ("We find the state driving licensure requirement to achieve the compelling state interests of maintaining, protecting, and regulating the public safety, the use of its public thoroughfares, and those who drive thereon, and to be the least restrictive means for so doing.").

See Lord v. Wilcox , 813 P.2d 656, 660 (Alaska 1991).

Greene v. Tinker , 332 P.3d 21, 41 (Alaska 2014).