*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| AMERIGOLD HOLDINGS, LLC, | ) | |
| | ) | Supreme Court No. S-18698 |
| Appellant, | ) | |
| | ) | Superior Court No. 2NO-20-00145 CI |
| v. | ) | |
| | ) | O P I N I O N |
| DOUGLAS G. BAKER and | ) | |
| SILVERBOW MINING, LLC, | ) | No. 7783 – August 8, 2025 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Second Judicial District, Nome, Romano D. DiBenedetto, Judge.

Appearances: Ralph B. Cushman, McCollum & Rounds, LLC, Anchorage, for Appellant. Lawrence V. Albert, Anchorage, for Appellees.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

BORGHESAN, Justice.

## I.    INTRODUCTION

To obtain a valid mining claim, a miner must place stakes in the ground to mark the parcel of land claimed, and then record a certificate of location for that parcel. Priority of right goes to the miner who stakes first. In this dispute over rights to mine a parcel of land near Nome, the plaintiffs alleged that the miner with the prior

right had "paper staked" his claim — that is, he never physically staked the land, but rather lied about doing so in his recorded certificate. After trial, the superior court rejected the argument that the lawsuit should be dismissed under the laches doctrine because the plaintiffs had waited too long to file suit. The court then ruled in favor of the plaintiffs on the merits, finding that the miner with the prior right had never staked his claim, making it invalid. The appeal raises two issues.

The first issue concerns the defense of laches. The plaintiffs, who sought declaratory judgment that the prior mining claim was invalid, argue that laches cannot apply because a declaratory judgment action is legal in nature, whereas laches applies only to equitable actions. But because this declaratory judgment action is essentially an action to quiet title, which is equitable in nature, laches can apply. We further hold that in some circumstances, prejudice to a nonparty caused by the delay in filing suit can justify a laches defense. Because the superior court ruled that prejudice to nonparties cannot count, we vacate and remand its rejection of the laches defense for further consideration.

The second issue concerns Alaska Evidence Rule 404(b), which bars "[e]vidence of other crimes, wrongs, or acts . . . if the sole purpose for offering the evidence is to prove the character of a person in order to show that the person acted in conformity therewith" but permits evidence of prior acts for other purposes. To prove that the miner with the prior right had paper staked the disputed claims, the plaintiffs sought to admit testimony from other miners that there was no evidence of physical staking at other claims the miner had recorded. The miners' testimony was admissible to show the absence of accident in rebutting the assertion that the stakes had disappeared due to foul weather and souvenir hunters. Therefore, the superior court did not err by admitting this testimony.

## II. FACTS AND PROCEEDINGS

Mining claims are governed by the Alaska Lands Act.[1] Under the Act, mining claims are established through a process of "discovery, location, and recording," granting the locator an "exclusive right of possession and extraction of the minerals."[2] To locate a mining claim, a person must stake the land with monuments.[3] Within 45 days of staking, the claimant must record a certificate of location in the recording district where the claim is located.[4] The right to claims is determined by priority, which is based on the date of location.[5]

### A. Facts

The disputed mining claims in this case were originally located in 1997. After the Department of Natural Resources (DNR) deemed the claims abandoned, they were relocated in May 2017 by Ian Foster and Douglas Baker. Both Foster and Baker recorded their claims in June 2017. Foster later transferred his claims to Silverbow Mining, LLC.

In September 2017 DNR notified Foster and Baker that their claims overlapped other active mining claims in DNR's land records. The overlapping claims had been recorded by Alexie Klutchnikov in June 2017, after Baker's but before

---

[1] AS 38.05.185-38.05.275.

[2] AS 38.05.195(a); *see also Gold Dust Mines, Inc. v. Little Squaw Gold Mining Co.*, 299 P.3d 148, 152 (Alaska 2012) ("Under Alaska law, mining rights on state lands are acquired through the process of 'location.' . . . Through location, a locator acquires a mining claim priority against subsequent locators to the selected claims." (quoting *Moore v. State, Dep't of Nat. Res.*, 992 P.2d 576, 578 (Alaska 1999))).

[3] AS 38.05.195(b)-(c); *see* 11 Alaska Administrative Code (AAC) 86.135, 11 AAC 86.205, 11 AAC 86.210.

[4] AS 38.05.195(c).

[5] 11 AAC 86.115 ("A location made on state-selected land in accordance with this chapter creates prior rights against subsequent locators, and becomes a mining claim, leasehold location, or prospecting site when the federal government conveys the selection to the state through tentative approval or patent, whichever occurs first.").

Foster's claims had been recorded. But Klutchnikov's recorded location certificates asserted that he staked the claims on April 20, 2017, before Foster and Baker had staked their claims, giving Klutchnikov's claims priority. DNR advised Baker and Silverbow that it was up to them to resolve the dispute through "legal agreements, claims purchases, or by quieting title in Court." In July 2019 DNR sent Silverbow notice that its claims had been closed because its conflicts with Klutchnikov's claims had not been resolved.

Meanwhile, Klutchnikov issued a quitclaim deed to Amerigold Holdings, LLC for the claims. Amerigold devised a mining plan, which DNR approved in July 2018. Amerigold's manager, Thomas Hice, authorized the establishment of a camp and staging of equipment near the claims in 2020. He contracted with dredgers for the 2020 mining season. And in his capacity as manager and through his separate company, Hice advanced more than $100,000 to explore the claims in exchange for future interest in royalties from mineral exploitation.

## B. Proceedings

Baker and Silverbow filed a complaint for declaratory relief and to quiet title in April 2020 — 31 months after receiving notice that their mining claims conflicted with Klutchnikov's and 9 months after Silverbow received notice that DNR had closed its claims. In October 2020, several months before trial, Klutchnikov was lost at sea in an accident.

Baker and Silverbow filed an amended complaint in January 2021. Relevant to this appeal, the amended complaint sought (1) declaratory relief that Klutchnikov had merely paper staked his locations, instead of physically locating them, and (2) quiet title of the claims in their favor.[6] Amerigold filed its answer the following month, pleading laches and other affirmative defenses.

---

[6] The parties later stipulated to the dismissal of other claims.

Discovery closed in March 2021. But in May, Amerigold disclosed photographs that it claimed showed Klutchnikov's mining claims were properly staked. Amerigold explained that it had only learned of the photographs a few weeks prior when a friend of Klutchnikov, Mikhail Prokhorin, who allegedly accompanied Klutchnikov to stake the disputed claims, informed Amerigold of their existence. Baker and Silverbow moved to bar admission of the evidence because it was not timely disclosed in discovery.

The court ruled that it would allow the photographs to be admitted "considering the probative value the[] photographs may or may not have." Yet it warned that the late disclosure of the photographs was "gross negligence" at best and might "pose credibility issues for . . . Prokhorin and the photographs themselves." The court stated that Amerigold was required to give Baker and Silverbow the cellphone for forensic analysis if requested.

Baker and Silverbow accordingly sought access to the phone. But Klutchikov's widow refused to deliver the phone, objecting to their plans to copy its contents. The parties ultimately stipulated that the photos would not be admitted.

Separately, in April 2021, Baker and Silverbow filed a motion in limine seeking to admit evidence of prior instances in which Klutchnikov had allegedly paper-staked claims. They argued that this evidence was not impermissible character evidence because it would be used to establish a "common plan for paper staking."[7] The court conditionally ruled the evidence admissible. Explaining that it would weigh the sufficiency of the prior acts evidence at trial, the court ruled that if "the proposed

---

[7] *See* Alaska R. Evid. 404(b)(1) ("Evidence of other crimes, wrongs, or acts is not admissible if the sole purpose for offering the evidence is to prove the character of a person in order to show that the person acted in conformity therewith. It is, however, admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.").

evidence sufficiently demonstrates that 'paper staking' occurred in these prior instances," it would "consider this evidence as evidence of intent, plan, knowledge, and absence of mistake or accident."

The court held a bench trial in June 2022. It heard testimony from Baker, Prokhorin, and others, including miners who testified that they had not observed evidence of staking or physical entry on lands where Klutchnikov had recorded mining claims. Amerigold objected to the relevance of the testimony about other claims, arguing that the claims discussed were not ones Klutchnikov quitclaimed to Amerigold. The court overruled this objection, stating that the testimony was relevant because a "find[ing] that Klutchnikov had [a] pattern and practice of . . . robbing people of their claims" would be relevant to whether Klutchnikov actually validly staked the disputed claims.

The court issued a written decision in August. As a threshold matter, it rejected Amerigold's laches defense because Amerigold had "failed to identify any competent testimony grounded on personal knowledge and demonstrating that [it] was prejudiced or harmed due to plaintiffs' delay in filing suit." The court noted trial testimony from Thomas Hice, Amerigold's manager, that his investment in Amerigold's mining operation was limited to his personal company, and that Amerigold had not incurred any risk in the undertaking. The court rejected any prejudice Hice might have suffered as a basis for laches because Hice was not the defendant.

Turning to the merits, the court found that Klutchnikov did not physically stake his claims, relying on expert testimony that there was no physical evidence or contemporaneous records or data to support Klutchnikov's locations. It found Prokhorin, who testified to accompanying Klutchnikov while he staked the disputed claims, not credible. It also found "credible additional evidence that Klutchnikov engaged in a common mode, plan or scheme" of paper staking. It concluded that Baker and Silverbow's mining locations "were valid and complied with requirements of

Alaska law; whereas Klutchnikov's claim locations were invalid and did not comply with the law."

Amerigold appeals.[8]

## III.   DISCUSSION

### A.   We Vacate The Order Rejecting Amerigold's Laches Defense.

The first issue on appeal is whether it was error to reject Amerigold's laches defense. The defense of laches may be raised "when a party delays asserting a claim for an unconscionable period."[9] Two factual findings must be made for the defense to apply: (1) "the plaintiff has unreasonably delayed in bringing the action," and (2) "this unreasonable delay has caused undue harm or prejudice to the defendant."[10]

We first explain why the doctrine of laches can apply to Baker and Silverbow's claims for quiet title and declaratory judgment. We then turn to the elements of the laches defense, noting that the superior court did not make a finding about unreasonable delay and explaining why it was legal error for the court not to consider prejudice to Hice in its laches analysis. For these reasons, we vacate and remand the superior court's ruling on laches. Finally, we reject Amerigold's argument that the lawsuit should be barred by laches because Klutchnikov's death created evidentiary difficulties for Amerigold's defense that would not have existed had Silverbow and Baker filed suit earlier. Amerigold did not make this argument to the superior court, and it fails to show plain error.

---

[8]   Baker and Silverbow filed a cross-appeal in April 2023, but moved to dismiss it in January 2024. We granted the motion to dismiss.

[9]   *Whittle v. Weber*, 243 P.3d 208, 217 (Alaska 2010) (quoting *State, Dep't of Com. & Econ. Dev., Div. of Ins. v. Schnell*, 8 P.3d 351, 358 (Alaska 2000)).

[10]   *Anderson v. State, Dep't of Admin., Div. of Motor Vehicles*, 440 P.3d 217, 220-21 (Alaska 2019) (quoting *City & Borough of Juneau v. Breck*, 706 P.2d 313, 315 (Alaska 1985)).

**1. Baker and Silverbow's claims for quiet title and declaratory judgment may be subject to a laches defense because they are equitable in nature.**

Laches is "an equitable defense against equitable causes of action, but not a legal defense against actions at law."[11] Whether the defense of laches may apply to particular claims therefore depends on whether the claim is legal or equitable in nature. The nature of a particular type of claim — legal or equitable — is a question of law that we review de novo.[12]

Baker and Silverbow asserted two claims for relief: one to quiet title to the disputed mining claims and one for declaratory judgment that Klutchnikov's claims, which were later assigned to Amerigold, were void because they were not properly staked. Baker and Silverbow concede that an action for quiet title is an equitable action. But they argue that because they have also asserted a claim for declaratory relief, which they contend is legal in nature, laches should not bar that claim.

We have explained that the statute authorizing declaratory relief adds "another remedy to existing legal and equitable remedies,"[13] suggesting that a declaratory judgment is "a sui generis form of relief."[14] "These characterizations cause a problem when the affirmative defense of laches is raised against a claim for declaratory relief, since laches is an equitable defense against equitable causes of action, but not a legal defense against actions at law."[15] "Courts often resolve this problem by

---

[11]   *Laverty v. Alaska R.R. Corp.*, 13 P.3d 725, 730 (Alaska 2000).

[12]   *Burke v. Maka*, 296 P.3d 976, 979 (Alaska 2013).

[13]   *Laverty*, 13 P.3d at 730 (quoting *Jefferson v. Asplund*, 458 P.2d 995, 997 (Alaska 1969)).

[14]   *Id.*

[15]   *Id.*

looking to the circumstances surrounding the claim and applying laches if the claim would have arisen in equity before declaratory judgment was available."[16]

Baker and Silverbow's claim, though styled as a declaratory judgment action, is for all intents and purposes a quiet title claim. In *Foster v. State* we considered whether laches could apply to a party's claim that he owned property in fee simple.[17] We reasoned that it could, stating that his claim was "essentially a request of the court to remove a cloud on his title — an action generally considered equitable in nature."[18]

Baker and Silverbow's claim for declaratory relief similarly seeks a judicial declaration of respective rights in real property. It states:

> Plaintiffs seek declaratory relief that Klutchnikov deliberately and fraudulently procured the Bluff Discovery 1-5 State mining locations in violation of the Alaska Land Act; these mining locations are therefore void along with any derivative conveyance to Amerigold subsequent thereto.
>
> . . . Plaintiffs seek further declaratory relief that if the Bluff Discovery 1-5 claims are voided for the reasons stated above, then DNR's notices to Foster that his Call My Bluff 3-5 mining claims were invalidated due to a conflict with Klutchnikov's prior locations are no longer justified and should be rescinded.

Although Baker and Silverbow invoke the Alaska Lands Act as the legal basis for their argument, the remedy they seek is not merely an abstract declaration of the law.[19] It is an adjudication of their rights vis-à-vis the rights of Amerigold in specific real property.

---

[16] *Id.*

[17] 752 P.2d 459, 465 (Alaska 1988).

[18] *Id.*

[19] *Cf. Laverty*, 13 P.3d at 729-31 (holding that laches barred claim for injunctive relief against enforcement of contract to remove gravel from lands owned by Alaska Railroad but did not bar claim for declaratory relief that railroad had constitutional duty to notify public before disposing of its lands because such ruling "would not, by itself, prejudice the defendants").

It is, as in *Foster*, "essentially a request of the court to remove a cloud on [their] title[s]," which is an equitable action.[20]  Therefore, both of Baker and Silverbow's claims are subject to the doctrine of laches.

### 2.  We remand for the superior court to decide whether Baker and Silverbow unreasonably delayed in filing suit.

Having concluded that laches may apply to both claims, we now examine whether the requirements for the defense are met.  Two factual findings are required for the defense to apply:  (1) "the plaintiff has unreasonably delayed in bringing the action," and (2) "this unreasonable delay has caused undue harm or prejudice to the defendant."[21]  "We review the superior court's factual findings for clear error, reversing only if we have a definite and firm conviction that based on the record as a whole a mistake has been made."[22]

In this case the superior court made no finding as to whether there was unreasonable delay.  Because it is not the function of an appellate court to make factual

---

[20]     *Foster*, 752 P.2d at 465.  In *Foster* we noted that the quiet title statute formerly "provided that such an action was 'of an equitable nature' " but that the reference to equity was deleted in 1962.  *Id.* at 465 n.17 (first citing § 56–1–91 Alaska Compiled Laws Annotated (ACLA) (1949); and then citing ch. 101, § 6.01, SLA 1962). We observed that "[t]he legislature may have intended to provide a cumulative remedy at law — which, presumably, would be subject to the statutes of limitations."  *Id.* Silverbow has not argued, and we therefore do not decide, whether the existence of the statute of limitations for quiet title actions precludes the defense of laches to such actions.  *See* AS 09.45.010; AS 09.10.030.  Nor do we address whether Silverbow is a person whose ownership interest is recorded under AS 40.17 for purposes of AS 09.10.030(b), which permits such a person to bring a quiet title action "at any time."

[21]     *Anderson v. State, Dep't of Admin., Div. of Motor Vehicles*, 440 P.3d 217, 220-21 (Alaska 2019) (quoting *City & Borough of Juneau v. Breck*, 706 P.2d 313, 315 (Alaska 1985)).

[22]     *Foster v. Pro. Guardian Servs. Corp.*, 258 P.3d 102, 106 (Alaska 2011); *see also Burke v. Maka*, 296 P.3d 976, 979 (Alaska 2013) ("The second issue is whether the facts demonstrate an unreasonable delay and a resulting prejudice. This raises questions of fact, which we review for clear error.").

findings on appeal,[23] and because we have identified a different error that warrants reversal, we instruct the superior court to decide on remand whether the filing of the lawsuit was unreasonably delayed.

### 3. We remand for the superior court to find whether prejudice suffered by Hice warrants a laches defense.

The superior court concluded that Amerigold had not suffered prejudice because there was no interference with the mining or other operations on the claim due to the late filing of the lawsuit. It also indicated that any harms to Hice, who had already invested significant funds in exploring the disputed claims, "were independently significant and had nothing to do with" Baker and Silverbow.

Amerigold argues that the court should have considered prejudice to Hice and that Amerigold was also prejudiced by the loss of evidence with Klutchnikov's death. Amerigold did not raise this second argument before the superior court. Therefore we review that point for plain error only.[24]

We hold it was a legal error to not consider the prejudice to Hice. Prejudice to a nonparty — at least one as closely connected to the defendant as Hice — can count as prejudice sufficient to establish a laches defense. However, we hold that the court's failure to consider prejudice in the form of lost evidence attributable to the delay in filing suit was not plain error.

---

[23] *Cf. Anderson*, 440 P.3d at 221 (stating that period of delay could be "unreasonable as a matter of law for laches purposes").

[24] *Hoffman Constr. Co. of Alaska v. U.S. Fabrication & Erection, Inc.*, 32 P.3d 346, 351 (Alaska 2001).

### a. Prejudice to a nonparty may qualify as undue prejudice for a laches defense.

Prejudice exists "where money or valuable services will be wasted as a result of the unreasonable delay, assuming the suit to be ultimately successful."[25] Whether prejudice to a nonparty may be considered for purposes of laches is a question of law we review de novo.[26]

Amerigold argues that prejudice suffered by Hice should count. Hice testified that he was the manager of Amerigold "for the purpose of investing money in" the disputed claims. He had agreed to personally advance funds to explore the claims in exchange for the option to mine the claims. Though Hice did not sign a written agreement with Amerigold, he estimated at trial that he had invested more than $100,000 in exploration activities. Amerigold asserts the delay was prejudicial because Hice, unaware of the dispute over the claims, invested money that would be wasted if Baker and Silverbow prevailed.

Silverbow responds that prejudice must be to the defendant, and that Amerigold failed to prove any prejudice to itself. Although Silverbow is correct that our previous cases specifically discuss prejudice to a defendant,[27] we do not read these cases to preclude considering prejudice to third parties.

---

[25] *Bibo v. Jeffrey's Rest.*, 770 P.2d 290, 293 (Alaska 1989); *see also, e.g.*, *Breck*, 706 P.2d at 314-17 (holding that halting construction on partially complete parking garage would be undue prejudice); *Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 457-58 (Alaska 1974) (holding that abandonment of hospital construction plan despite substantial expenditures would constitute undue prejudice).

[26] *See Laverty v. Alaska R.R. Corp.*, 13 P.3d 725, 730-31 (Alaska 2000).

[27] *See, e.g.*, *Burke*, 296 P.3d at 979 ("To bar a claim under laches, a court must find both an unreasonable delay in seeking relief and resulting prejudice to the defendant." (quoting *Whittle v. Weber*, 243 P.3d 208, 217 (Alaska 2010))); *Keener v. State*, 889 P.2d 1063, 1066 (Alaska 1995) ("In order for the defense of laches to

Rather, we hold that prejudice to a nonparty may be considered, in some cases, when analyzing the defense of laches.[28] This may be such a case. Hice testified that he was Amerigold's manager throughout this litigation, had made a grubstake investment in Amerigold,[29] and had a future interest in Amerigold's mining proceeds from the disputed claims. If Hice's testimony about his contractual agreement with Amerigold is accepted, he has a substantial interest that would be affected by the outcome of this lawsuit. And, according to his testimony, he has spent a good deal of money exploring the claims — which might not have been spent had Silverbow and Amerigold's lawsuit been filed sooner. In our view, an equitable defense should not be so rigidly defined as to automatically discount the interests of third parties in a contractual relationship with the defendant, particularly those who have testified about the prejudice they stand to suffer from an untimely lawsuit. Therefore, we reverse the superior court's ruling that any prejudice to Hice cannot not be considered in the laches determination.

---

succeed, the court must find that the plaintiff unreasonably delayed seeking relief and that prejudice to the defendant resulted from the plaintiff's delay."); *Concerned Citizens*, 527 P.2d at 457 ("A court must find both an unreasonable delay in seeking relief and resulting prejudice to the defendant.").

[28]     *See, e.g.*, *N.Y. Pub. Int. Rsch. Grp., Inc. v. Levitt*, 395 N.Y.S.2d 608, 609-10 (N.Y. Sup. 1977) (determining that plaintiffs' 12-year delay in seeking declaratory judgment to void agreement would deprive investors who had relied on agreement of security and applying laches because "[t]he rights of too many other parties have been created"); *see also* 27A AM. JUR. 2D *Equity* § 145 (2025) ("Sometimes, laches applies when third parties have contracted with the defendant and are harmed by the delay in filing suit. The court may look at the disruptive effect a plaintiff's relief would have on other parties in determining whether laches applies to the claim." (footnote omitted)).

[29]     A "grubstake" is "[m]oney or supplies advanced to a prospector in return for a share in any findings." WEBSTER'S NEW WORLD DICTIONARY OF AMERICAN ENGLISH (3rd College Ed. 1988), cited in *Kinney v. State*, 927 P.2d 1289, 1293 (Alaska App. 1996) (Grubstaking is "a traditional way for western miners to raise capital.").

### b. The failure to consider the loss of evidence was not plain error.

Prejudice may also occur when the "dissipation and reasonably expected loss of evidentiary materials over ensuing years" makes it difficult to defend against a claim.[30] Amerigold argues for the first time on appeal that the superior court should have considered whether the loss of evidence with Klutchnikov's death was prejudicial. It posits that if Baker and Silverbow had filed suit promptly, Klutchnikov would have still been alive to testify and provide photographs of the staking operation.

We consider arguments not raised to the superior court if "the issues establish plain error."[31] "We will find plain error 'where an obvious mistake has been made which creates a high likelihood that injustice has resulted.' "[32]

When considering a defense of laches, the superior court must determine whether the claimed prejudice can fairly be ascribed to the plaintiffs' lack of diligence in filing suit.[33] We cannot say that the failure to ascribe the prejudice stemming from lost evidence to Baker and Silverbow's delay in filing suit, rather than to Amerigold's own conduct or other factors, was an obvious mistake.

---

[30] *Kollander v. Kollander*, 322 P.3d 897, 905 (Alaska 2014); *Anderson v. State, Dep't of Admin., Div. of Motor Vehicles*, 440 P.3d 217, 221-22 (Alaska 2019).

[31] *Hoffman Constr. Co. of Alaska v. U.S. Fabrication & Erection, Inc.*, 32 P.3d 346, 351 (Alaska 2001); *see also State v. Nw. Constr., Inc.*, 741 P.2d 235, 239 (Alaska 1987) ("Under the 'plain error' doctrine, an issue not raised at trial may nonetheless be considered by this court if it appears that an obvious mistake has been made which creates a high likelihood that injustice has resulted.").

[32] *Small v. Sayre*, 384 P.3d 785, 788 (Alaska 2016) (quoting *D.J. v. P.C.*, 36 P.3d 663, 668 (Alaska 2001)).

[33] *See Moore v. State*, 553 P.2d 8, 19 (Alaska 1976) (concluding that prosecution of plaintiffs' claim was not inequitable when "[w]e fail to understand how defendants can ascribe . . . prejudice to plaintiffs' 'lack of diligence' "), *superseded by statute on other grounds*, ch. 257, § 3, SLA 1976, *as recognized in Sullivan v. Resisting Env't Destruction on Indigenous Lands*, 311 P.3d 625, 630 (Alaska 2013).

Amerigold first argues that but for the delay, Klutchnikov would have been alive to testify at trial. Klutchnikov died in October 2020, more than five months after Silverbow filed its lawsuit. But there was other evidence that Amerigold could have, and did, attempt to present to prove Klutchnikov staked the claims. The fact that this evidence was not presented, or was not persuasive to the court, cannot be attributed only to the timing of the lawsuit.

Photographs assertedly showing the staking were recovered from Klutchnikov's phone. Despite the late disclosure, the superior court was willing to admit the photographs into evidence because of their potential probative value. But Amerigold ultimately stipulated not to admit the photographs into evidence because Klutchnikov's widow objected to copying the phone's contents. The loss of this evidence therefore was not due solely to the delay in filing suit.

The same is true for testimony about the staking. Klutchnikov's friend, Prokhorin, testified that he accompanied Klutchnikov on the mission to stake the claims and described those events at trial. It is true that the superior court did not find Prokhorin credible, seemingly in part because he did not disclose the existence of photos of the staking until long after the lawsuit had been filed. Amerigold argues that there "would have been no delay in producing the photos, and therefore no credibility issue with Prokhorin" had the lawsuit been filed earlier. Yet the superior court also noted that parts of Prokhorin's account of the staking expedition were implausible and contradicted by other witnesses. For example, Prokhorin testified that intense weather may have washed away Klutchnikov's stakes. But three witnesses testified that this kind of foul weather did not occur until later in the year. So, as with the loss of evidence due to the inability to copy the phone, Prokhorin's credibility problems were not solely attributable to the delay in filing suit.

Finally, it was not obviously prejudicial for the superior court to consider testimony suggesting paper staking at Klutchnikov's other mining claims. Although Klutchnikov might have testified that he had in fact physically staked those other

mining claims, it is not obvious how he could have rebutted the other miners' testimony about their own observations: that they saw no evidence of physical staking or entry when they walked the land. And as Baker and Silverbow point out, Klutchnikov's testimony was potentially subject to impeachment based on a prior conviction involving a crime of dishonesty.[34]

For these reasons, it is not obvious that the superior court should have ruled that the loss of evidence attributable to the timing of Baker and Silverbow's lawsuit was sufficiently prejudicial to establish laches.

**B.      It Was Not Error To Admit Testimony About Other Alleged Instances Of Paper Staking By Klutchnikov.**

Alaska Evidence Rule 404(b) bars "[e]vidence of other crimes, wrongs, or acts . . . if the sole purpose for offering the evidence is to prove the character of a person in order to show that the person acted in conformity therewith." However, such evidence may be admissible "for other purposes including . . . proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[35]

---

[34]      *See* Alaska R. Evid. 609(a); AS 11.56.210(a)(1) (unsworn falsification in the second degree).

[35]      Alaska R. Evid. 404(b)(1).

We review de novo the question of what qualifies as admissible noncharacter evidence under Rule 404(b).[36] In doing so, "we adopt 'the rule of law that is most persuasive in light of precedent, reason, and policy.' "[37]

The superior court granted Baker and Silverbow's motion to admit testimony by witnesses who observed no evidence of staking at Klutchnikov's other mining claims. It stated that if "the proposed evidence sufficiently demonstrates that 'paper staking' occurred in these prior instances," it would "consider this evidence as evidence of intent, plan, knowledge, and absence of mistake or accident."

At trial Silverbow presented testimony from other miners who had experience with Klutchnikov. One miner testified that he discovered that Klutchnikov had recorded mining claims that overlapped his claims; that Klutchnikov's claims asserted a staking date earlier than his claims despite being recorded later; and that he never saw evidence of staking or physical entry on the lands Klutchnikov claimed. Another miner testified that Klutchnikov had recorded mining claims near the miner's own claims, but when the miner walked the land he never saw evidence of staking or entry.[38]

Finding this testimony credible, the superior court ruled that the testimony showed that Klutchnikov had "engaged in a common mode, plan or scheme within the

---

[36] *See Bolden v. State*, 720 P.2d 957, 960-61 (Alaska App. 1986) (concluding that superior court "erred" in admitting evidence of defendant's prior acts "[b]ecause the acts did not constitute an admissible common scheme or plan, or prove facts in dispute"); *Belcher v. State*, 372 P.3d 279, 283 (Alaska App. 2016) (determining that superior court "erred in admitting the prior offense as tending to prove scheme or plan" because there was no "overarching scheme").

[37] *Hess v. State*, 20 P.3d 1121, 1123 (Alaska 2001) (quoting *Smithart v. State*, 988 P.2d 583, 586 (Alaska 1999)).

[38] Not all the details described in the affidavits accompanying the motion in limine were presented at trial. Silverbow and Baker defend the superior court's ruling by reference to the testimony admitted at trial, not assertions contained in the affidavits.

meaning of Evidence Rule 404(b) regarding paper staking," although it did not explain precisely why. The court relied on this evidence in finding that Klutchnikov never staked the claims disputed by Baker and Silverbow, leading to judgment in their favor.

The parties focus primarily on whether the testimony was admissible to show a "plan" for purposes of Evidence Rule 404(b). We are doubtful that it is admissible for that purpose. But the superior court did not err because the testimony is admissible to show absence of accident.

To qualify as a plan, evidence of prior acts must show more than similarity between the acts in question; "there must be some overall scheme of which each of the crimes is but a part."[39] In *Fields v. State* we cited with approval federal court decisions in which prior acts evidence was held admissible under the plan exception because the "uncharged offense involved a similar transaction *and* was clearly part of the overall fraudulent scheme."[40]

The miners' testimony about Klutchnikov's other claims does not show an overall scheme of which the disputed claims were but a part. The testimony shows similarities between the claims disputed in this case and some of Klutchnikov's other claims: in each instance, Klutchnikov recorded mining claims, but there was an absence of physical evidence at the claim locations showing that he staked the claims. In one of the instances, the other claims had a timing pattern similar to the disputed claims: Klutchnikov's recorded certificate asserted a staking date shortly before the other miner, but it was recorded shortly after the other miner's claim. Yet there is scant showing of an "overall scheme," no clear link between the prior incidents and the ones

---

[39] *Bolden*, 720 P.2d at 961 n.2 (quoting 22 C. WRIGHT & K. GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5244 at 359 (Supp. 1985)); *accord Belcher*, 372 P.3d at 283 (concluding that there was no evidence of "overarching scheme" for which each crime was but one part).

[40] 629 P.2d 46, 50 (Alaska 1981) (emphasis added) (discussing *United States v. Austin*, 462 F.2d 724 (10th Cir. 1972)).

at issue in this case. The only evidence of a "plan" to paper-stake claims was evidence suggesting prior acts of paper staking.[41]

Yet the testimony was admissible to show absence of accident. This case hinges on whether Klutchnikov physically staked his mining claims or falsely claimed to have done so. Baker testified that he saw no stakes in the ground or other indication that Klutchnikov had staked the disputed claims before he did, even though they were allegedly staked just weeks before. Prokhorin suggested that Klutchnikov's stakes likely were blown over or washed away due to intense weather in the area. He also suggested that the stakes may have been taken by visitors for use as firewood or souvenirs. But other miners also testified that they saw no evidence of stakes or physical entry on other lands claimed by Klutchnikov. Their testimony rebuts Prokhorin's suggestions because the odds are low that all these stakes in different locations would have been blown or washed away, or scavenged for firewood shortly after being placed. The improbability that all these stakes, assertedly placed by Klutchnikov at various remote places and at various times, quickly disappeared because of foul weather or souvenir hunters supports the inference that Klutchnikov never placed any stakes in the ground at these locations.[42]

---

[41] *Cf.* 22 C. WRIGHT & K. GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5244 at 359 (Supp. 1985) (explaining that while court's statement that "defendant has a 'plan' to seduce every runaway he could may not do violence to the language" of Rule 404(b), statement "undermine[d] the policy of [the rule] by permitting the use of propensity to prove conduct," in absence of some "overall scheme of which each of the crimes is but a part"), *quoted in Bolden*, 720 P.2d at 961 n.2.

[42] *See People v. Mardlin*, 790 N.W.2d 607, 622-24 (Mich. 2010) (concluding that past fires were relevant to determining whether present fire was set because "the frequency of past fires so closely associated with defendant logically suggested a lack of coincidence"); *State v. Skillicorn*, 479 P.3d 254, 270 (Or. 2021) (explaining that doctrine of chances is premised on "the objective improbability of the recurrence of similar, uncommon events").

For this reason, the superior court did not err by admitting the miners' testimony and relying on it when finding that Klutchnikov did not physically stake the disputed mining claims in this case.[43] We therefore affirm the superior court's ruling on the merits and remand only as to the laches defense.

## IV.     CONCLUSION

For the foregoing reasons, we VACATE final judgment and REMAND the case for further proceedings consistent with this opinion.

---

[43]     Evidence that satisfies one of Rule 404(b)'s exceptions is admissible only when "its probative value outweighs its prejudicial impact." Alaska R. Evid. 403. The superior court ruled that the evidence was more probative than prejudicial. Amerigold does not challenge the superior court's decision on this point. Amerigold does argue that the decision to admit this evidence was not a harmless error, but because we concluded it was not an error at all, this argument is unavailing.